IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAL FISHKIN, IGOR CHERNOMZAV, and FRANCIS WISNIEWSKI,<br><br>    Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>SUSQUEHANNA PARTNERS, G.P. and SUSQUEHANNA INTERNATIONAL GROUP, LLP,<br><br>    Defendants, Counterclaim Plaintiffs and Third-party Plaintiffs,<br><br>v.<br><br>TABFG, LLC, NT PROP TRADING LLC, and RICHARD PFEIL,<br><br>    Third-party Defendants. | **CIVIL ACTION NO. 03-3766**<br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Plaintiffs, Cal Fishkin ("Fishkin"), Igor Chernomzav ("Chernomzav") and Francis Wisniewski ("Wisniewski"), by and through their undersigned counsel and for their Amended Complaint against Defendants Susquehanna Partners, G.P. and Susquehanna International Group, LLP (hereinafter collectively "SIG"), respectfully state as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this case to invalidate certain restrictive covenant provisions in their employment agreements which are far more onerous than reasonably necessary to protect defendants' legitimate interests. These provisions purport to restrict

plaintiffs from earning a living for nine months after their employment ends by prohibiting them from trading stocks and stock index futures products that certain of the plaintiffs previously traded for defendants even though such trading activity would not materially compete with defendants because of the wide breadth of the market in which they trade. In addition, these restrictive covenants unreasonably prohibit plaintiffs from associating with each other for five years after their employment ends. Because these covenants promote no legitimate business interest of the defendants, but rather merely seek to eliminate or repress competition so that defendants can gain an unfair economic advantage, the covenants are unenforceable under applicable law.

2. Plaintiffs Fishkin and Chernomzav also bring this action to recover for injuries sustained as a result of having been fraudulently induced to accept employment with SIG. Fishkin and Chernomzav accepted employment in reasonable reliance upon the representations by SIG (a) that, although SIG's initial contract for traders was at a level which was lower than "market" level or "competitive" compensation, at the end of those three years, when the traders are "free agents," SIG's practice was to offer traders new contracts at "market" level or "competitive" compensation; and (b) that they would be offered such new contracts if they stayed on with SIG. Such representations were false and fraudulent when made because SIG did not have any such practice of offering traders new contracts for "market" and "competitive" compensation at the end of three years and did not intend to offer such contracts to Fishkin and Chernomzav at that time.

## PARTIES

3. Plaintiff Fishkin is an individual residing at 411 W. Ontario, Apartment 725, Chicago, Illinois 60610.

4. Plaintiff Chernomzav is an individual residing at 411 W. Ontario, Apartment 725, Chicago, Illinois 60610.

5. Plaintiff Wisniewski is an individual residing at 950 W. Huron, Apt. 304, Chicago, Illinois 60622.

6. Defendant SP is a partnership formed under the laws of Delaware with a principal place of business in Bala Cynwyd, Pennsylvania.

7. Defendant SIG is a limited liability partnership formed and registered under the laws of Delaware with a principal place of business in Bala Cynwyd, Pennsylvania.

## JURISDICTION

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

## VENUE

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) in that defendants reside in this district and in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this district.

3

## RELEVANT FACTS

### EMPLOYMENT WITH DEFENDANTS

10. Fishkin and Chernomzav began their employment with SIG and entered into employment agreements with SIG on March 20, 2000 and March 30, 2000, respectively.

11. Wisniewski also signed an employment agreement upon joining SIG and subsequently entered employment agreements with SIG in February 2002 and another one in September 2002.

12. The respective employment agreements (the "Agreements") are attached hereto as Exhibits A, B and C.

13. At the time they signed the agreements, Fishkin and Chernomzav were recent college graduates. The Agreements signed by Fishkin and Chernomzav were contracts of adhesion that were not negotiated in any way.

14. When he joined SIG, Wisniewski was required to sign a contract of adhesion, similar to Fishkin and Chernomzav.

15. The Agreements are drafted for securities professionals who are registered with the National Association of Securities Dealers ("NASD"). None of plaintiffs is required to be NASD registered or is NASD registered.

16. While employed by defendants, Fishkin and Wisniewski were responsible for trading Dow Futures on the floor of the Chicago Board of Trade.

4

17. Dow Futures are financial instruments which obligate the buyer to buy and the seller to sell the financial equivalent of the Dow Jones Industrial Index at a fixed date in the future. Dow Futures are often traded against positions in the 30 Dow Jones stocks as a financial hedge.

18. While employed by defendants, Fishkin and Wisniewski also had occasion to trade for defendants futures in the Standard and Poor's 500 Index ("S&P Futures") and the NASD 100 Index ("NASD Futures"), both of which are traded on the Chicago Mercantile Exchange.

19. Fishkin and Wisniewski have traded these futures products both in their original, pit-traded form and through the electronic market, using what are known as the "e-mini" versions of these futures contracts.

20. Fishkin and Wisniewski have also traded certain stocks listed on the New York Stock Exchange and on the NASD's NASDAQ electronic stock market as hedges against these futures positions and otherwise.

21. Fishkin's and Wisniewski's jobs were not ones that involved any contact with defendants' customers or building any customer relationships, but rather required Fishkin and Wisniewski to make trades for defendants' own accounts for the sole benefit and enrichment of defendants.

22. On any given day, when Fishkin and Wisniewski were trading Dow Futures, they were competing with over 100 other traders in the Dow Futures pit at the Chicago Board of Trade.

5

23. On any given day, when Fishkin and Wisniewski were trading S&P Futures, NASD Futures and stocks, they were competing with many thousands of traders who trade the S&P and NASD futures and stocks on the U.S. national financial markets.

24. If Fishkin and Wisniewski begin trading Dow Futures on their own, they will still compete with over 100 other pit traders. As a result, their activities will statistically, and in fact rarely, if ever, compete with the trading activities of defendants' Dow Futures traders.

25. If Fishkin and Wisniewski begin trading S&P Futures, NASD Futures or stocks on their own, they will still compete with literally thousands of traders who trade these products on the open market. As a result, their activities will statistically, and in fact rarely, if ever, compete with defendants' S&P Futures, NASD Futures and stock traders.

26. During his employment with SIG, Chernomzav traded various stock options and related underlying stocks for SIG at the American Stock Exchange in New York City.

27. Like Fishkin and Wisniewski, Chernomzav's employment responsibilities did not involve any contact with defendants' customers or any customer relationships. His job was to make trades for SIG's own accounts to benefit and enrich SIG. Chernomzav never traded as part of his employment Dow Futures, S&P Futures, NASD Futures or the stocks that Fishkin and Wisniewski traded.

6

28.    As their agreements were about to expire, Fishkin and Chernomzav were asked to sign new employment agreements with defendants. During discussions in this regard, Fishkin and Chernomzav learned that defendants had no intention to compensate them at anything close to "market" or "competitive" levels as defendants had represented was the practice of SIG and would be offered to them if they accepted employment and stayed on with SIG for three years. As a result, Fishkin and Chernomzav did not sign new agreements.

29.    SIG has already replaced plaintiffs with experienced traders.

### PLAINTIFFS' POST-EMPLOYMENT OPPORTUNITIES

30.    Fishkin and Chernomzav have completed the terms of their employment agreements with SIG. They intend to work together in an enterprise which will involve the trading of Dow Futures at the Chicago Board of Trade and trading S&P Futures and NASD Futures on the Chicago Mercantile Exchange and trading stocks on the New York Stock Exchange and the NASDAQ market.

31.    Wisniewski has resigned his employment with SIG. Wisniewski would like to associate with Fishkin and Chernomzav and trade securities on various exchanges without restriction.

32.    As they leave defendants' employ, none of the Plaintiffs has or will take any trade secrets or proprietary or confidential information belonging to defendants.

33.    Nor will plaintiffs compete in any direct sense with defendants as they will merely be individuals trading Dow Futures in a large pit comprising over 100 other traders.

34. Because Chernomzav previously traded products for defendants other than the products which he now would like to trade in association with Fishkin, he will not be in violation of the restrictive covenant in his contract forbidding him to trade the same product for nine months after he leaves the employ of SIG.

### RESTRICTIVE COVENANTS

35. When Fishkin expressed his intention not to sign another employment agreement with SIG, Fishkin was told by SIG that he must abide by certain covenants contained in his Agreement even after his employment with SIG ended. One such provision provides that for a period of five years after the termination of his employment, Fishkin cannot "become associated in any partnership, corporation or other entity with, any person who is, or was at any time during the nine (9) months prior to such hiring, association or exercise of supervisory responsibility, an employee or consultant of SIG...." (*See* Ex. A, Fishkin Agreement at ¶ 8(b)).

36. Another provision in the Fishkin agreement provides that "[f]or a period of nine (9) months following the later of termination of [his] employment or the third anniversary following [his] entry into the training course, [Fishkin] shall not trade any products in which he...was trading for SIG at any time during the three (3) month period prior to the termination of [his] employment." (*See* Ex. A, Fishkin Contract at ¶ 8(c)).

37. Defendants' covenants restricting the plaintiffs from associating with each other or trade Dow Futures at the Chicago Board of Trade or S&P Futures or NASD Futures at the Chicago Mercantile Exchange or stocks on the New York Stock Exchange or the NASDAQ market because such activities will purportedly harm "SP's legitimate interest in protecting its goodwill, trade secrets and other Confidential Information" is

8

damaging to plaintiffs and to their professional reputations. (*See* Ex. A, Fishkin Contract at ¶ 7).

38. Another provision purports to extend the duration of the restrictive covenants during any litigation challenging their validity. (*See* Ex. A, Fishkin Contract at ¶ 12).

39. The Chernomzav and Wisniewski Agreements contain identical restrictive covenants. (*See* Ex. B, Chernomzav Agreement at ¶¶ 7, 8(b), 8(c), 12; Ex. C, Wisniewski Agreement at ¶¶ 6, 7(b), 7(c), 11).

### COUNT I: DECLARATORY JUDGMENT
### THE AGREEMENT IS VOID AND/OR UNENFORCEABLE

40. Plaintiffs repeat and reallege paragraphs 1 through 39 of this Amended Complaint as though fully set out hereafter.

41. An actual controversy exists with respect to the validity and enforceability of the restrictive covenants contained in the Agreements.

42. Because the restrictive covenants cited above do not promote any legitimate business purpose of defendants (*e.g.*, protecting customer relationships, good will or trade secrets), but rather merely serve to repress even the most remote possibility of competition so that defendants can gain an unfair economic advantage, these covenants are unenforceable under applicable law.

43. Moreover, the restrictive covenants purporting to restrict their ability to associate with each other and to bar trading of certain stocks and futures are otherwise unenforceable for, *inter alia*, the following reasons:

9

a. Plaintiffs do not possess any alleged trade secrets, confidential information, or proprietary data of defendants, and enforcement of the restrictive covenants is not necessary to protect against the disclosure of any such information.

b. The restrictive covenants are not reasonably calculated to protect any legitimate business interest of defendants.

c. The restrictive covenants are overly broad and unduly restrictive.

d. The provision purporting to extend the duration of the restrictive covenants during litigation is designed solely to chill any legal challenge to these provisions and to protect otherwise illegal provisions from judicial review.

e. Defendants fail to take appropriate measures to protect their alleged trade secrets, confidential information, and proprietary data.

44. A declaration that the restrictive covenants are invalid and unenforceable is required to prevent any breach of the Agreements which might otherwise occur absent such a finding in declaration by this Court.

45. A declaration that the restrictive covenants are invalid and unenforceable will terminate and afford relief from the uncertainty, insecurity and controversy concerning the Agreements giving rise to this proceeding

WHEREFORE, plaintiffs respectfully request that this Court enter a declaratory judgment in their favor and against defendants, finding as follows:

a. any restrictive covenants contained in the Agreements attached hereto as Exhibits A-C which purport to restrict their ability to associate with each other and to trade Dow Futures at the Chicago Board of Trade, S&P and NASD Futures at the Chicago Mercantile Exchange or stocks at the New York Stock Exchange or in the NASDAQ market are invalid and unenforceable; and

b. any restrictive covenants contained in the Agreements attached hereto as Exhibits A-C which restrict their ability to associate with each other and to trade Dow Futures at the Chicago Board of Trade, S&P Futures and NASD Futures at the Chicago Mercantile Exchange or stocks at the New York Stock Exchange or in the NASDAQ are overly broad, unenforceable, against public policy, and void.

### COUNT II: INJUNCTIVE RELIEF

46. Plaintiffs repeat and reallege paragraphs 1 through 45 of this Amended Complaint as though fully set out hereafter.

47. Plaintiffs have a clear right to relief and to associate with each other and to trade Dow Futures at the Chicago Board of Trade, S&P and NASD Futures at the Chicago Mercantile Exchange and stocks at the New York Stock Exchange and in the NASDAQ market.

48. Money damages are inadequate remedy as plaintiffs will be immediately and irreparably harmed if they are deprived of their right to be employed in their trade as a result of Defendants unlawful assertion that a restrictive covenant prohibits their right to associate with each other and to trade Dow Futures at the Chicago Board of Trade, S&P Futures and NASD Futures at the Chicago Mercantile Exchange and stocks on the

New York Stock Exchange and in the NASDAQ market including, but not limited to, by the inability to earn income associated with employment in their trade, by the loss of employment opportunities, and by the damage that will be done to their reputation.

49. Plaintiffs will suffer a greater injury if injunctive relief is denied than defendants will suffer if injunctive relief is granted.

50. Enjoining defendants is in the public interest.

WHEREFORE, plaintiffs respectfully request that this Court enter an order in their favor and against defendants as follows:

a. enjoining defendants from enforcing or attempting to enforce the restrictive covenants prohibiting plaintiffs' rights to associate with each other and to trade Dow Futures at the Chicago Board of Trade, S&P Futures and NASD Futures at the Chicago Mercantile Exchange and stocks at the New York Stock Exchange and in the NASDAQ market; and

b. enjoining defendants from interfering or attempting to interfere with Plaintiffs' abilities or rights to associate with each other and to trade Dow Futures at the Chicago Board of Trade, S&P Futures and NASD Futures at the Chicago Mercantile Exchange and stocks at the New York Stock Exchange and in the NASDAQ market.

**COUNT III: FRAUDULENT INDUCEMENT TO ACCEPT EMPLOYMENT**

51. Plaintiffs Fishkin and Chernomzav repeat and reallege paragraphs 1 through 50 of this Amended Complaint as though fully set out hereafter.

52. Fishkin and Chernomzav were fraudulently induced into accepting employment with SIG and fraudulently induced into executing their respective Agreements with SIG.

53. In June of 1999, Meera Dhanalal ("Dhanalal"), who was then the person in charge of recruiting for SIG, met with Fishkin and represented to Fishkin that although SIG's initial contract for traders was at a compensation level which was lower than "market" compensation, at the end of their first three years, when the traders are "free agents," SIG's practice is to offer the traders new contracts for "market" level or "competitive" compensation and that Fishkin would be offered a new contract for "market" level or "competitive" compensation at that time, if he stayed on with SIG.

54. Dhanalal's representations, on behalf of SIG to Fishkin were material to his decision to accept employment with SIG and later to sign his Agreement with SIG. Fishkin reasonably relied on such representations in deciding to accept employment with SIG and to sign his Agreement with SIG.

55. In June of 1999, Chernomzav separately also met with Dhanalal, who represented to Chernomzav that although SIG's initial contract for traders was at a compensation level which was lower than "market" compensation, at the end of their first three years, when the traders are "free agents," SIG's practice is to offer the traders new contracts for "market" level or "competitive" compensation and that Chernomzav would be offered a new contract for "market" level or "competitive" compensation at that time, if he stayed on with SIG.

13

56. Dhanalal's representations on behalf of SIG to Chernomzav were material to his decision to accept employment with SIG and later to sign his Agreement with SIG. Chernomzav reasonably relied on such representations in deciding to accept employment with SIG and to sign his Agreement with SIG.

57. The representations, as set forth above, were made by SIG knowing them to be false, or with reckless disregard as to their truth or falsity, with the intent to induce Fishkin and Chernomzav into relying on them by accepting employment with SIG and by signing their Agreements with SIG.

58. It is alleged on information and belief that SIG did not and does not have any such practice of offering its traders "market" level or "competitive" compensation contracts at the end of their first three years and that SIG had no intention of offering such "market" level or "competitive" contracts to Fishkin and Chernomzav at such time.

59. At the end of their first three years, Fishkin and Chernomzav were all offered new contracts as traders for SIG, but such contracts were well below the "market" level of compensation for traders.

60. Jerry Steinborn, an SIG Partner and head of the SIG Chicago office, admitted to Fishkin towards the end of his first three year period that, "We are going to screw you because we can."

61. It is alleged on information and belief that the fraudulent misrepresentations made to Fishkin and Chernomzav to induce them to accept employment with SIG and to sign their Agreements with SIG, were part of a pattern and practice of SIG to fraudulently induce highly qualified recruits into accepting

14

employment with SIG and to sign agreements with SIG with restrictive covenants based upon the false representation that SIG's practice was to offer new contracts at the end of three years, when traders are "free agents" for "market" level or "competitive" compensation, when SIG did not have any such practice and had no intention of offering such "market" level or "competitive" level contracts to Fishkin and Chernomzav at such time.

62. It is alleged on information and belief that SIG engages in such a pattern and practice knowing that the recruits to whom it makes such representations have no reasonable way of checking on the representations of SIG, which has superior knowledge, is a more sophisticated bargainer than the recruits, and is in a superior bargaining position, as compared to the recruits. At the end of the first three years, having been fraudulently induced into accepting employment and signing their employment agreements with SIG, the traders for SIG like Fishkin and Chernomzav, are particularly vulnerable because of the restrictive covenants they were fraudulently induced to sign.

63. Fishkin and Chernomzav have, as the direct and proximate result of the fraudulent misrepresentations, sustained damages, including, but not limited to, loss of compensation in accordance with the misrepresentations, the loss of employment opportunities, and losses due to the restrictive covenants which they were fraudulently induced to enter into.

64. The conduct of SIG as set forth above is so willful, wanton, malicious and outrageous as to entitle Fishkin and Chernomzav to punitive damages.

WHEREFORE, plaintiffs Fishkin and Chernomzav request that judgment be entered in their favor and against defendants in an amount in excess of $75,000, together with interests, costs, attorneys' fees, punitive damages, and such other and further relief as this Court deems just and equitable.

Respectfully submitted,

*/s/ Paul J. Greco*

SIGNATURE VALIDATION CODE PG634
Paul J. Greco, Esq. (I.D. No. 55770) (PG634)
Jacquelyn J. Ager, Esq. (I.D. No. 76830) (JJA252)
Conrad O'Brien Gellman & Rohn, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102
(215) 864-8063/8082

Leland W. Hutchinson
Amy Sklenicka Carnow
Freeborn & Peters
311 South Wacker Drive, Suite 3000
Chicago, IL (312) 360-6503

Kenneth A. Sweder, Esquire
Sweder & Ross LLP
21 Custom House Street, Suite 300
Boston, MA 02110

Counsel for Plaintiffs Cal Fishkin, Igor
Chernomzav and Francis Wisniewski

Dated: February 23, 2004

# CERTIFICATE OF SERVICE

I, Paul J. Greco, hereby certify that I caused true and correct copies of the foregoing Amended Complaint to be served in the manner indicated upon the below-listed parties:

*By Hand Delivery:*

    Larry H. Spector, Esquire
    WOLF BLOCK SCHORR and SOLIS-COHEN
    1650 Arch Street, 22nd Floor
    Philadelphia, PA 19103-2097

*By First-Class Mail*

    Polly N. Phillippi, Esquire
    KANTROWITZ & PHILLIPPI
    Suite 4210 Centre Square West
    1500 Market Street
    Philadelphia, PA 19102

*By Federal Express:*

    Kevin J. Clancy, Esquire
    LOWIS & GELLEN
    200 West Adams Street, Suite 1900
    Chicago, IL 60606

    Leland W. Hutchinson, Jr., Esquire
    Freeborn & Peters
    300 South Wacker Drive – Suite 3000
    Chicago, IL 60606

Dated: March 24, 2005

Paul J. Greco