

# SUSQUEHANNA PARTNERS, GP

## EMPLOYMENT AGREEMENT BETWEEN

## SUSQUEHANNA PARTNERS, G.P.

and

Igor Chernomzav

This Agreement is entered into on this ___ day of March, 2000 by and between Susquehanna Partners, G.P., a partnership formed under the laws of Delaware with a principal place of business at, 401 City Avenue, Bala Cynwyd, Pennsylvania 19004 and its related and/or affiliated entities ("SP"), and Igor Chernomzav ("Employee") residing at 679 9th Avenue, Apartment 2, New York, New York.

WHEREAS, SP is engaged in, among other businesses, the active trading of securities and other financial products; and

WHEREAS, Employee has been employed by SP in connection with the trading of securities and other financial products and now desires to be trained and educated by, and to continue his employment with, SP on the terms and conditions set forth in this Agreement; and

WHEREAS, SP desires to educate, train and employ Employee on the terms and conditions set forth in this Agreement.

WHEREFORE, the parties hereto, intending to be legally bound hereby, do agree as follows:

1. **Employment.** SP agrees to employ Employee on the terms and conditions set forth in this Agreement effective March 20, 2000.

2. **Training.** SP hereby enrolls Employee in its training course, beginning March 20, 2000 and ending approximately on May 26, 2000. The terms and conditions contained in this Agreement are effective as of Employee's signing of this agreement.

3. **Exclusivity.** Employee will not perform any employment or contractual activities/services (including brokerage business) except for the account of SP without the prior written consent of SP.

4. **Representation and Warranty.** Except for SP, Employee represents and warrants that he or she is not presently under a contract, written or oral, to provide services as an options or other securities trader or as an "upstairs" trader or as a researcher or to provide services substantially similar to the services being contracted for hereunder and further represents that neither the execution nor delivery of this Agreement constitutes a breach of any other contract of which Employee is subject. Employee will defend and hold SP and its officers, directors, employees and agents harmless from any and all claims, costs and expenses suffered or incurred

by SP, including attorneys' fees, as a result of, or in connection with, a breach of the representation contained in this paragraph.

5. <u>Regulation</u>. Employee shall be obligated to maintain all required licenses and registrations and to comply with all applicable laws, exchange requirements and SP policies, procedures and guidelines. In this regard, Employee shall not trade for his or her own account except in compliance with SP policy, nor for the account of any other person or entity, nor shall he/she provide trading advice to any other person, at any time this Agreement is in force and effect. SP will be responsible for the costs associated with all required licenses and registrations.

6. <u>Compensation</u>. Upon completion of the training class mentioned in paragraph 2, Employee shall receive compensation while employed by, and providing services to, SP under this Agreement as follows:

   (a) Employee's salary shall increase to a monthly rate of $4,166.66 commencing upon the conclusion of the training class mentioned above in paragraph 2.

   (b) Employee shall be eligible for a discretionary bonus for calendar year ending December 31, 2000. SP expects that this discretionary bonus will be determined at an annual rate between $20,000 and $60,000, with an average expected bonus for 2000 determined at an annual rate of $40,000. As described in paragraph 6(e) below, the bonus amount payable under this paragraph 6(b) is discretionary. Moreover, as this discretionary bonus range and bonus are effective at the conclusion of the training class mentioned above in paragraph 2, the bonus amounts set forth will be prorated based on the date the class concludes.

   (c) Employee shall also be eligible for discretionary bonuses for calendar years ending after December 31, 2000. As described in paragraph 6(e) below, all such discretionary bonuses will be determined by Susquehanna in its sole discretion.

   (d) No discretionary bonuses will be paid under this paragraph 6 in the event Employee's employment is terminated by either party prior to the award and payment of such bonus by SP. All compensation (including bonuses) shall be paid in accordance with SP's normal payroll policies as in effect from time to time and shall be net of any applicable withholding requirements.

   (e) The discretionary bonuses payable hereunder and the term average expected bonus as used herein refer only to those bonuses which may be awarded by SP in its sole discretion. When determining whether to award such bonuses and the amount of such bonuses, SP may consider any factors it deems relevant, such as by way of example only, whether Employees performance (as determined by SP in its sole discretion) meets the standard of performance required by SP. Employee understands that the bonus amounts payable pursuant to paragraphs 6(b) and (c) are entirely within the discretion of SP and SP retains the absolute, unfettered discretion to grant discretionary bonuses in amounts less than or more than the bonus ranges set forth above or to grant no bonus whatsoever.

7. <u>Termination</u>. Either SP or Employee may terminate Employee's employment hereunder at any

2

time for any or no reason at all by providing the other notice of the effective date of such termination (which effective date may be immediately), in which event neither SP nor Employee shall have further obligations or liabilities hereunder, except that after the termination date the provisions of paragraphs 8-21 shall remain in full force and effect. Employee acknowledges that it is his or her intention and commitment that termination of this Agreement within three years of his or her entry into the training course will be exercised by him or her only to seek employment or opportunity that does not involve Employee in any trading activity of any product or any other activity reasonably similar to the activities that Employee performs for SP and that the restrictions set forth in paragraphs 8-21 below are therefore reasonable in light of and consistent with the mutual commitments of the parties to this Agreement and in light of SP's legitimate interest in protecting its goodwill, trade secrets and other Confidential Information (as defined herein).

8. (a) Non-Competition. In addition to other valuable consideration received by Employee (including the enrollment of Employee in the training class referred to in paragraph 2 hereof and the increase to Employee's salary referred to in paragraph 5(a) hereof), Employee acknowledges and recognizes the highly competitive nature of SP's business and the investment made by SP in the education, training, and promotion of Employee and that as an Employee of SP he or she shall have access to SP trade secrets (as defined in the Uniform Trade Secrets Act) and other Confidential Information. Employee further acknowledges that as a result of the education, training, employment and promotion that he or she shall receive from SP pursuant to this Agreement, Employee may receive offers of employment by others engaging in or wishing to engage in any trading activity or other activities reasonably similar to activities performed by Employee for SP at equivalent or greater compensation than that offered by SP. Employee accordingly agrees, for the valuable training, education and other consideration received by Employee hereunder and in order to protect the legitimate business interests of SP (including SP's goodwill, trade secrets and other Confidential Information), that until the later of the termination of Employee's employment by SP and the third anniversary following Employee's entry into the training course, Employee shall not, without the written consent of a Managing Director of SP, directly or indirectly, in any manner or capacity (as a stockholder, sole proprietor, officer, director, employee, partner, agent, consultant or in any other corporate or representative capacity), engage in any trading activity of any product or any other activity reasonably similar to activities that Employee performs for SP.

(b) Other Restrictions. Employee further agrees that so long as he or she is employed by SP and for a period of five (5) years after termination of his or her employment (except when acting on behalf of SP), he or she shall not directly or indirectly in any manner or capacity: (1) induce any persons who are employees or consultants of SP, or persons seconded from SP, to discontinue his or her employment or association with SP; (2) hire, manage or otherwise have supervisory responsibility over or become associated in any partnership, corporation or other entity with, any person who is, or was at any time during the nine (9) months prior to such

3

hiring, association or exercise of supervisory responsibility, an employee or consultant of SP or a person seconded from SP; (3) take any other action that improperly interferes with the business of SP, such as, by way of example only: a) interfering with any ongoing business relationship between SP and any other person or entity by offering to or providing a service or product similar to a service or product provided by SP; b) interfering in any way with any joint venture or similar relationship between SP and any other person or entity by proposing to or entering into a similar business relationship with that person or entity; c) accepting or soliciting funds from any person or entity that provides funds to SP.

(c) Further Restriction. For a period of nine (9) months following the later of the termination of your employment or the third anniversary following Employee's entry into the training course, Employee shall not trade in any products in which he or she was trading for SP at any time during the three (3) month period prior to the termination of Employee's employment.

9. Acknowledgment. Employee understands that the provisions of paragraphs 8(a), 8(b) and/or 8(c) hereof may limit his or her ability to earn a livelihood in a business similar to the business of SP, but nevertheless believes that he or she shall receive remuneration and other benefits hereunder, including training and education, sufficient to justify the restrictions contained in such provisions. Further, Employee, given his or her education, skills and abilities, does not believe these restrictions would prevent him or her from earning a living. Employee also acknowledges that the business of SP is international in scope and that the restrictions set forth in this Agreement are accordingly reasonable in geographic breadth even though not limited to any particular area or market.

10. Modification by Court. If for any reason a forum of competent jurisdiction shall find the provisions of 8(a), 8(b) and/or 8(c) hereof unreasonable in duration, in geographic scope and/or in any other aspect, the prohibitions contained herein shall be restricted to such time and geographic areas and in such other manner as such court determines to be reasonable. Such restriction shall apply only to the operation of such provisions in the particular jurisdiction in which such adjudication is made.

11. Recognition. Employee recognizes that SP would not employ Employee and would not allow Employee to enter the training course if Employee were not willing to agree to paragraphs 8(a), 8(b) and 8(c).

12. Time. The length of time stated in paragraphs 8(a) (three years), 8(b) (five years) and 8(c) (nine months) shall not run during any litigation or arbitration contesting or enforcing paragraph 8.

13. Confidentiality. Both SP and Employee acknowledge that, in order to permit the Employee to successfully perform and/or continue to perform the duties associated with his employment with SP, it is necessary for SP to entrust Employee with certain valuable proprietary information and knowledge of certain modes of business operation ("Confidential Information") which are essential to the profitable operation of SP and which give SP a competitive advantage over other firms pursuing related business activities. In the context of this Agreement,

4

"Confidential Information" shall include all information, whether oral or written, which is indicated to be confidential by SP when it is disclosed to the Employee or, even if not so indicated, information, whether oral or written, respecting SP's business including, but not limited to, its trading and/or order execution techniques, methods and/or strategies; computer programs, software and data; computational algorithms, procedures, methods and/or techniques; training procedures; clearing operations; business plans and ideas; marketing techniques or strategies; products and product lines; pricing policies; trade secrets; cost information; commercial relationships; customers; financial results and projections (including, without limitation, the profitability of SP's products and product lines); research and development activities and results; the identity and/or profitability of SP's traders and/or any other information that could reasonably be expected to prove harmful to SP if disclosed to third parties (including, but not limited to, any information that could reasonably be expected to aid a competitor of SP vis a vis SP). "Confidential Information" shall not include information which is public knowledge, which shall become public knowledge through no direct or indirect involvement on the part of the Employee or which is generally known in the industry. All Confidential Information which Employee may obtain or create on or subsequent to his beginning employment with SP and prior to the end of Employee's employment hereunder (whether or not during the period of this Agreement) relating to the business of SP shall not, without the prior written consent of SP, be published, disclosed or made accessible by him to any other person, firm or corporation either during or after the termination of his employment, or used by him except while employed by SP in the business and for the benefit of SP. Employee shall be entitled to disclose Confidential Information if in the opinion of the Employee's legal counsel such disclosure is required to comply with any law, order, decree or governmental request, in which event the Employee shall promptly notify SP of the disclosure requirement and, if requested, provide reasonable cooperation to SP in obtaining a protective order or other confidential treatment to protect the confidentiality of the information to be disclosed.

Employee further agrees not to disclose to SP any confidential or proprietary information belonging to any of the Employee's previous employers, or belonging to any other party, without first securing the written permission of such previous employers or other parties.

Employee further agrees not to disclose any of the terms of this Agreement to any person except to his or her outside advisors who need to know such information for the purpose of assisting him or her in the negotiation of this Agreement or with his or her financial affairs (it being agreed that Employee will inform those advisors of the confidential nature of this Agreement and that Employee will prevent such agents from disclosing the terms of this Agreement to any other individual or entity).

Nothing contained in this agreement or in any other agreement between SP and Employee shall be deemed to weaken or waive any rights related to the protection of trade secrets or confidential information that SP may have under common law or any applicable statutes or rules.

14. Ownership of Information. Any model, formula, algorithm, procedure, method, computer software, technique, strategy or other similar information that is not generally known in the securities industry and that is or was made known or furnished to or developed by Employee while in the employ of SP shall be and remain the sole and exclusive property of SP and shall not be utilized by Employee in any manner whatsoever after the termination of his or her employment. All right, title, and interest in and to any intellectual property, including without limitation any inventions (whether or not patentable), patents, trademarks, service marks, trade dress, trade names, trade secrets, copyrights, software, applications, creations and properties, made known or furnished to or developed by Employee in the course or rendering services to SP, shall be and remain the sole and exclusive property of SP and Employee and his or her successors and assigns shall have no interest of any kind therein or in or to any results or proceeds therefrom. Employee makes, and agrees to make, any assignment necessary to accomplish this Section 14 and agrees to perform any act reasonably requested by SP in furtherance of this assignment. Employee irrevocably designates SP and its officers, agents and representatives as Employee's attorney-in-fact, with full power of substitution, to act for and on Employee's behalf to execute and file any document necessary or appropriate to accomplish such assignment, in each case, with the same effect as if executed, filed or performed by Employee.

15. Remedies.

   a. Injunction. Employee acknowledges that SP would be irreparably harmed if Employee were to breach any of the terms of this Agreement and, therefore, agrees that SP shall be entitled to injunctive relief to prevent any breaches or threatened breaches of this Agreement and to specific performance of its terms in addition to any other legal or equitable remedies. Nothing contained herein shall be construed as prohibiting SP from pursuing any other remedies at law or in equity which it may have.

   b. Liquidated Damages. Employee agrees that quantification of the damages that would be suffered by SP in the event of a breach by Employee of any of the terms of this Agreement would be impossible and that it is therefore appropriate for Employee and SP to stipulate to liquidated damages that are to be recoverable by SP in the event of a breach by Employee of any of the terms of this Agreement. Employee agrees that SP shall have the option in its sole discretion to pursue either injunctive relief pursuant to paragraph 15(a) or liquidated damages pursuant to this paragraph 15(b). Employee agrees to pay as liquidated damages to SP in the event of a breach of the terms of this Agreement the following amounts:

   - for a breach occurring on or before the first anniversary of this Agreement: $800,000

   - for a breach occurring on or before the second anniversary of this Agreement: $750,000

   - for a breach occurring after the second anniversary of this Agreement: $700,000

The foregoing amounts shall not be pro rated for any portion of a year.

16. Survival. The obligations of the Employee under paragraph 8 through 21 shall survive the termination for any reason of Employee's employment by SP.

17. Severability. If any one or more of the provisions or part of a provision contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect in any jurisdiction, such invalidity, illegality or unenforceability shall not affect the validity or enforceability of this Agreement in any other jurisdiction or any other provision or part of a provision of this Agreement, but this Agreement shall be reformed and construed in such jurisdiction as if such invalid or illegal or unenforceable provision or part of a provision had never been contained herein and such provision or part reformed so that it would be valid, legal and enforceable in such jurisdiction to the maximum extent possible.

18. Successors. This Agreement shall not be assigned by Employee or by SP except that SP may assign this Agreement in the event of a change in control or sale of SP in which case this Agreement shall inure to the benefit of SP's successors and assigns.

19. Governing Law; Arbitration.

(a) This Agreement and questions relating to its validity, interpretation, performance and enforcement shall be governed by and construed according to the laws of the Commonwealth of Pennsylvania.

(b) SP and Employee agree that arbitration is a time and cost effective method to resolve disputes. As part of and in consideration for the mutual promises made by SP and Employee in this Agreement, except as provided in paragraph 19(c), SP and Employee each agree to arbitrate any dispute, claim, or controversy that may arise between them out of, or in connection with, this Agreement and/or Employee's employment or termination of employment with SP (including, without limitation, any discrimination claims based on any state or federal statute or otherwise). Employee acknowledges that SP is an associated person of a National Association of Securities Dealers, Inc. (the "NASD") member and that SP's principal place of business is in Bala Cynwyd, Pennsylvania and therefore agrees that such arbitration shall be held in Philadelphia, Pennsylvania before the NASD under the rules of the NASD then in effect (a copy of the arbitration rules of the NASD currently in effect can be obtained from SP's Human Resources Department or from the NASD's web site at www.nasdr.com). The award of the arbitrators shall be final and binding on the parties and judgment upon the award may be entered in any court of competent jurisdiction.

(c) Notwithstanding the provisions of paragraph 19(b), either party may seek injunctive relief or other equitable remedies to prevent any breach or threatened breach of this Agreement or may seek specific performance of any of its terms in any state or federal court located in Montgomery County, Pennsylvania. In addition, if the NASD is unable under its rules or otherwise refuses to arbitrate any dispute, claim

7

or controversy in accordance with paragraph 19(b). Employee and SP submit to the exclusive jurisdiction of the state and federal courts located in Montgomery County, Pennsylvania to resolve such dispute, claim or controversy. In this regard, each of SP and Employee submits to the exclusive jurisdiction of the state and federal courts for Montgomery County, Pennsylvania in any action required to be adjudicated in such courts under this paragraph. Employee and SP further agree that such courts shall have personal jurisdiction over each of them in connection with such action or proceeding and waive, to the fullest extent each may effectively do so, the defense or argument of an inconvenient forum or improper venue to the maintenance of such action or proceeding.

20. Compliance With Law. Employee agrees to obey and comply with all laws and regulations to which Employee's activities are subject.

21. Entire Agreement. This Agreement contains the entire understanding among the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understanding, inducements of conditions, express or implied, oral or written except as herein contained. This Agreement may not be modified or amended, other than by an agreement in writing signed by the parties.

Sincerely,

For Susquehanna Partners G.P.
General Operating Officer

Agreed and Accepted:

Igor Chernomzav

Date: 3/24/00

8