# EXHIBIT C



# EMPLOYMENT AGREEMENT BETWEEN

## SUSQUEHANNA INTERNATIONAL GROUP, LLP

and

## FRANCIS WISNIEWSKI

This Agreement is entered into on this _____ day of _____, 2002 by and between Susquehanna International Group, LLP, a limited liability partnership formed and registered under the laws of Delaware with a principal place of business at 401 City Avenue, Bala Cynwyd, Pennsylvania 19004 and its related and/or affiliated entities ("SIG"), and Francis Wisniewski ("Employee"), an individual residing at 529 W. Franklin Avenue, Naperville, IL 60540.

WHEREAS, SIG is engaged in, among other businesses, the active trading of securities and other financial products; and

WHEREAS, Employee has been trained, educated and employed by, and now desires to receive additional training and education and to continue his or her employment with SIG on the terms and conditions set forth in this Agreement; and

WHEREFORE, the parties hereto, intending to be legally bound hereby, do agree as follows:

1. <u>Employment</u>. SIG agrees to employ Employee on the terms and conditions set forth in this Agreement effective January 1, 2003 (the "Effective Date"). Prior to the Effective Date, Employee's employment with SIG shall continue to be governed by the Employment Memorandum between SIG and Employee, dated as of February 20, 2002, which agreement shall remain in full force and effect.

2. <u>Exclusivity</u>. Employee will not perform any employment or contractual activities/services (including brokerage business) except for the account of SIG without the prior written consent of SIG.

3. <u>Representation and Warranty</u>. Except for SIG, Employee represents and warrants that he or she is not presently under a contract, written or oral, to provide services as an options trader or "upstairs" trader or researcher or services substantially similar to the services being contracted for hereunder and further represents that neither the execution nor delivery of this Agreement constitutes a breach of any other contract of which Employee is subject. Employee will defend and hold SIG and its officers, directors, employees and agents harmless from any and all claims, costs and expenses suffered or incurred by SIG, including attorneys' fees, as a result of, or in connection with, a breach of the representation contained in this paragraph.

September 10, 2002

4. **Regulation.** Employee shall be obligated to maintain all required licenses and registrations and to comply with all applicable laws, exchange requirements and SIG policies, procedures and guidelines. In this regard, Employee shall not trade for his or her own account except in compliance with SIG policy, nor for the account of any other person or entity, nor shall he/she provide trading advice to any other person, at any time this Agreement is in force and effect. While Employee is employed by SIG, SIG will be responsible for the costs associated with maintaining all required licenses and registrations.

5. **Compensation.** Employee shall receive compensation while employed by, and providing services to, SIG under this Agreement as follows:

   (a) Employee shall receive a salary at a monthly rate of $10,416.67 commencing on the Effective Date.

   (b) SIG shall pay employee a signing bonus in the gross amount of $200,000 shortly after Employee's execution of this Agreement. In the event Employee's employment with SIG terminates within six (6) months of the Effective Date, Employee shall immediately repay SIG the gross amount of this signing bonus. Employee acknowledges that SIG would not agree to pay Employee this bonus if Employee had not agreed to the provisions of paragraphs 7-20 hereof.

   (c) Employee shall be eligible for a discretionary bonus for calendar year ending December 31, 2003. SIG expects that this discretionary bonus will be determined at an annual rate of $625,000. As described in paragraph 5(e) below, the bonus amount payable under this paragraph 5(c) is discretionary.

   (d) No discretionary bonuses will be paid under this paragraph 5 in the event Employee's employment is terminated by either party prior to the award and payment of such bonus by SIG. All compensation (including bonuses) shall be paid in accordance with SIG's normal payroll policies as in effect from time to time and shall be net of any applicable withholding requirements.

   (e) The discretionary bonus payable hereunder and the term average expected bonus as used herein refer only to that bonus which may be awarded by SIG in its sole discretion. When determining whether to award such bonus and the amount of such bonus, SIG may consider any factors it deems relevant, such as by way of example only, whether Employee's performance (as determined by SIG in its sole discretion) meets the standard of performance required by SIG. Employee understands that the bonus amount payable pursuant to paragraph 5(c) is entirely within the discretion of SIG and SIG retains the absolute, unfettered discretion to grant a discretionary bonus in an amount less than or more than the expected bonus amount set forth above or to grant no bonus whatsoever.

6. **Termination.** Either SIG or Employee may terminate Employee's employment hereunder at any time for any or no reason at all by providing the other notice of the effective date of such termination

(which effective date may be immediately), in which event neither SIG nor Employee shall have further obligations or liabilities hereunder, except that after the termination date the provisions of paragraphs 7-20 shall remain in full force and effect. Employee acknowledges that it is his or her intention and commitment that termination of this Agreement prior to December 31, 2003 will be exercised by him or her only to seek employment or opportunity that does not involve Employee in any trading activity of any product or any other activity reasonably similar to the activities that Employee performs for SIG and that the restrictions set forth in paragraphs 7-20 below are therefore reasonable in light of and consistent with the mutual commitments of the parties to this Agreement and in light of SIG's legitimate interest in protecting its goodwill, trade secrets and other Confidential Information (as defined herein).

7. (a) <u>Non-competition</u>. In addition to other valuable consideration received by Employee (including the signing bonus set forth in paragraph 5(b) hereof), Employee acknowledges and recognizes the highly competitive nature of SIG's business and the investment made by SIG in the education, training and promotion of Employee and that as an Employee of SIG he or she shall have access to SIG trade secrets (as defined in the Uniform Trade Secrets Act) and other Confidential Information. Employee further acknowledges that as a result of the education, training, employment and promotion that he or she shall receive from SIG pursuant to this Agreement, Employee may receive offers of employment by others engaging in or wishing to engage in any trading activity or other activities reasonably similar to activities performed by Employee for SIG at equivalent or greater compensation than that offered by SIG. Employee accordingly agrees, for the valuable training, education and other consideration received by Employee hereunder and in order to protect the legitimate business interests of SIG (including SIG's goodwill, trade secrets and other Confidential Information), that while employed hereunder and through December 31, 2003 (if later), Employee shall not, without the written consent of a Managing Director of SIG, directly or indirectly, in any manner or capacity (as a stockholder, sole proprietor, officer, director, employee, partner, agent, consultant or in any other corporate or representative capacity), engage in any activity reasonably similar to activities that Employee performs for SIG or (a) trade (or assist, educate, train, financially or otherwise support any other person or entity to trade) in, or (b) be financially interested in the trading by any other person or entity of, any products.

(b) Employee further agrees that so long as he or she is employed by SIG and for a period of five (5) years after termination of his or her employment (except when acting on behalf of SIG), he or she shall not directly or indirectly in any manner or capacity: (1) induce any persons who are employees or consultants of SIG, or persons seconded from SIG, to discontinue his or her employment or association with SIG; (2) hire, manage or otherwise have supervisory responsibility over or become

-3-

associated in any partnership, corporation or other entity with, any person who is, or was at any time during the nine (9) months prior to such hiring, association or exercise of supervisory responsibility, an employee or consultant of SIG or a person seconded from SIG; (3) take any other action that improperly interferes with the business of SIG, such as, by way of example only: a) interfering with any ongoing business relationship between SIG and any other person or entity by offering to or providing a service or product similar to a service or product provided by SIG; b) interfering in any way with any joint venture or similar relationship between SIG and any other person or entity by proposing to or entering into a similar business relationship with that person or entity; c) accepting or soliciting funds from any person or entity that provides funds to SIG.

(c) Employee further agrees that while employed hereunder and until the latest of: (i) September 30, 2004, and (ii) nine (9) months following the termination of Employee's employment with SIG, Employee shall not trade in any products in which Employee was trading for SIG at any time during the three (3) month period prior to the termination of Employee's employment with SIG.

8. Acknowledgment. Employee understands that the provisions of paragraphs 7(a), 7(b) and 7(c) hereof may limit his or her ability to earn a livelihood in a business similar to the business of SIG, but nevertheless believes that he or she shall receive remuneration and other benefits hereunder, including training and education, sufficient to justify the restrictions contained in such provisions. Further, Employee, given his or her education, skills and abilities, does not believe these restrictions would prevent him or her from earning a living. Employee also acknowledges that the business of SIG is international in scope and that the restrictions set forth in this Agreement are accordingly reasonable in geographic breadth even though not limited to any particular area or market.

9. Modification By Court. If for any reason a forum of competent jurisdiction shall find the provisions of 7(a), 7(b) and/or 7(c) hereof unreasonable in duration, in geographic scope and/or in any other aspect, the prohibitions contained herein shall be restricted to such time and geographic areas and in such other manner as such court determines to be reasonable. Such restriction shall apply only to the operation of such provisions in the particular jurisdiction in which such adjudication is made.

10. Recognition. Employee recognizes that SIG would not continue to employ and promote Employee if Employee were not willing to agree to paragraph 7.

11. Time. The length of time stated in paragraphs 7(a) (through December 31, 2003), 7(b) (five years) and 7(c) (through September 30, 2004, or 9 months following the termination of Employee's employment) shall not run during any period that Employee is in violation of any of the terms of paragraph 7 or while there is any litigation or arbitration contesting or enforcing such paragraph and shall be extended

-4-

for the period of any such violation, litigation or enforcement.

12. Confidentiality. Both SIG and Employee acknowledge that, in order to permit the Employee to successfully perform and/or continue to perform the duties associated with his or her employment with SIG, it is necessary for SIG to entrust Employee with certain valuable proprietary information and knowledge of certain modes of business operation ("Confidential Information") which are essential to the profitable operation of SIG and which give SIG a competitive advantage over other firms pursuing related business activities. In the context of this Agreement, "Confidential Information" shall include all information, whether oral or written, which is indicated to be confidential by SIG when it is disclosed to the Employee or, even if not so indicated, information, whether oral or written, respecting SIG's business including, but not limited to, its trading and/or order execution techniques, methods and/or strategies; computer programs, software and data; computational algorithms, procedures, methods and/or techniques; training procedures; clearing operations; business plans and ideas; marketing techniques or strategies; products and product lines; pricing policies; trade secrets; cost information; commercial relationships; customers; financial results and projections (including, without limitation, the profitability of SIG's products and product lines); research and development activities and results; the identity and/or profitability of SIG's traders and/or any other information that could reasonably be expected to prove harmful to SIG if disclosed to third parties (including, but not limited to, any information that could reasonably be expected to aid a competitor of SIG vis a vis SIG). "Confidential Information" also includes all information as to which SIG owes an obligation of confidentiality to a third party (including, but not limited to, computer related vendors (hardware and software)). "Confidential Information" shall not include information which is public knowledge, which shall become public knowledge through no direct or indirect involvement on the part of the Employee or which is generally known in the industry. All Confidential Information which Employee may obtain or create on or subsequent to his or her beginning employment with SIG and prior to the end of Employee's employment hereunder (whether or not during the period of this Agreement) relating to the business of SIG shall not, without the prior written consent of SIG, be published, disclosed or made accessible by him or her to any other person, firm or corporation either during or after the termination of his or her employment, or used by him or her except while employed by SIG in the business and for the benefit of SIG. Employee shall be entitled to disclose Confidential Information if in the opinion of the Employee's legal counsel such disclosure is required to comply with any law, order, decree or governmental request, in which event the Employee shall promptly notify SIG of the disclosure requirement and, if requested, provide reasonable cooperation to SIG in obtaining a protective order or other confidential treatment to protect the confidentiality of the information to be disclosed.

Employee further agrees not to disclose to SIG any confidential or proprietary information belonging to any of the Employee's previous employers, or belonging to any other party, without first securing the written permission of such previous employers or other parties.

Employee further agrees not to disclose any of the terms of this Agreement to any person except (i) to his or her outside advisors who need to know such information for the purpose of assisting him or her in the negotiation of this Agreement or with his or her financial affairs and (ii) subject to the restrictions set forth in paragraph 7 hereof, to his or her prospective or future employers or other persons for whom Employee may provide services who need to know such information for the purpose of determining that Employee's employment or provision of services will not violate any of the provisions of this Agreement (it being agreed that Employee will inform those advisors, prospective and future employers and other persons of the confidential nature of this Agreement and that Employee will prevent all such persons from disclosing the terms of this Agreement to any other individual or entity).

Nothing contained in this agreement or in any other agreement between SIG and Employee shall be deemed to weaken or waive any rights related to the protection of trade secrets or confidential information that SIG may have under common law or any applicable statutes or rules.

13. <u>Ownership of Information.</u> Any model, formula, algorithm, procedure, method, computer software, technique, strategy or other similar information that is not generally known in the securities industry and that is or was made known or furnished to or developed by Employee while in the employ of SIG shall be and remain the sole and exclusive property of SIG and shall not be utilized by Employee in any manner whatsoever after the termination of his or her employment. All right, title, and interest in and to any intellectual property, including without limitation any inventions (whether or not patentable), patents, trademarks, service marks, trade dress, trade names, trade secrets, copyrights, software, applications, creations and properties, made known or furnished to or developed by Employee in the course or rendering services to SIG, shall be and remain the sole and exclusive property of SIG and Employee and his or her successors and assigns shall have no interest of any kind therein or in or to any results or proceeds therefrom. Employee makes, and agrees to make, any assignment necessary to accomplish this Section 13 and agrees to perform any act reasonably requested by SIG in furtherance of this assignment. Employee irrevocably designates SIG and its officers, agents and representatives as Employee's attorney-in-fact, with full power of substitution, to act for and on Employee's behalf to execute and file any document necessary or appropriate to accomplish such assignment, in each case, with the same effect as if executed, filed or performed by Employee.

14. Remedies.

(a) Injunction. Employee acknowledges that SIG would be irreparably harmed if Employee were to breach any of the terms of this Agreement and, therefore, agrees that SIG shall be entitled to injunctive relief to prevent any breaches or threatened breaches of this Agreement and to specific performance of its terms in addition to any other legal or equitable remedies. Nothing contained herein shall be construed as prohibiting SIG from pursuing any other remedies at law or in equity which it may have.

15. Survival. The obligations of the Employee under paragraphs 7 through 20 shall survive the termination for any reason of Employee's employment by SIG.

16. Severability. If any one or more of the provisions or part of a provision contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect in any jurisdiction, such invalidity, illegality or unenforceability shall not affect the validity or enforceability of this Agreement in any other jurisdiction or any other provision or part of a provision of this Agreement, but this Agreement shall be reformed and construed in such jurisdiction as if such invalid or illegal or unenforceable provision or part of a provision had never been contained herein and such provision or part reformed so that it would be valid, legal and enforceable in such jurisdiction to the maximum extent possible.

17. Successors. This Agreement shall not be assigned by Employee or by SIG except that SIG may assign this Agreement in the event of a change in control or sale of SIG in which case this Agreement shall inure to the benefit of SIG's successors and assigns.

18. Governing Law; Arbitration.

(a) This Agreement and questions relating to its validity, interpretation, performance and enforcement shall be governed by and construed according to the laws of the Commonwealth of Pennsylvania.

(b) SIG and Employee agree that arbitration is a time and cost effective method to resolve disputes. As part of and in consideration for the mutual promises made by SIG and Employee in this Agreement, except as expressly provided in paragraph 18(c), SIG and Employee each agree to arbitrate any dispute, claim or controversy that may arise between them out of, or in connection with, this Agreement and/or Employee's employment or termination of employment with SIG (including, without limitation, any discrimination claims based on any state or federal statute or otherwise). Employee acknowledges that SIG is an associated person of a National Association of Securities Dealers, Inc. (the "NASD") member and that SIG's principal place of business is in Bala Cynwyd, Pennsylvania and therefore agrees that such arbitration shall be held in Philadelphia, Pennsylvania before the NASD under the rules of the NASD then in effect (a

-7-

copy of the arbitration rules of the NASD currently in effect can be obtained from SIG's Human Resources Department or from the NASD's web site at www.nasdr.com). The award of the arbitrators shall be final and binding upon the parties and judgment upon the award may be entered in any court of competent jurisdiction.

(c) Notwithstanding the provisions of paragraph 18(b), either party may seek injunctive relief or other equitable remedies to prevent any breach or threatened breach of this Agreement or may seek specific performance of any of its terms in any state or federal court located in Montgomery County, Pennsylvania. In addition, if the NASD is unable under its rules or otherwise refuses to arbitrate any dispute, claim or controversy in accordance with paragraph 18(b), Employee and SIG submit to the exclusive jurisdiction of the state and federal courts located in Montgomery County, Pennsylvania to resolve such dispute, claim or controversy. In this regard, each of SIG and Employee submits to the exclusive jurisdiction of the state and federal courts for Montgomery County, Pennsylvania in any action required to be adjudicated in such courts under this paragraph. Employee and SIG further agree that such courts shall have personal jurisdiction over each of them in connection with such action or proceeding and waive, to the fullest extent each may effectively do so, the defense or argument of an inconvenient forum or improper venue to the maintenance of such action or proceeding.

19. <u>Compliance With Law</u>. Employee agrees to obey and comply with all laws and regulations to which Employee's activities are subject.

20. <u>Entire Agreement</u>. Except as otherwise provided in Paragraph 1 above, this Agreement contains the entire understanding among the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements of conditions, express or implied, oral or written except as herein contained. This Agreement may not be modified or amended, other than by an agreement in writing signed by the parties.

Sincerely,

_____
For Susquehanna International Group, LLP
General Operating Officer

Agreed and Accepted:

_____
FRANCIS WISNIEWSKI

Date:_____

-8-