IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CAL FISHKIN, et al.,              :    CIVIL ACTION
                                  :
        v.                        :
                                  :
SUSQUEHANNA PARTNERS, G.P.,       :
et al.,                           :
                                  :
        v.                        :
                                  :
TABFG, LLC, et al.,               :    NO. 03-3766


MEMORANDUM AND ORDER

McLaughlin, J.                          February 12, 2007


        In this memorandum, the Court considers two cross-
motions for summary judgment concerning the proper measure of
damages under Pennsylvania law for breach of a non-competition
agreement.


I.    BACKGROUND

        Cal Fishkin and Igor Chernomzav are securities traders
who were hired fresh out of college by Susquehanna International
Group, LLC ("SIG")in 1999.  Mr. Fishkin and Mr. Chernomzav left
SIG in early 2003 to start their own competing business, TABFG,
LLC ("TABFG"), which traded through a joint venture formed with a
separate company, NT Prop. Trading LLC ("NT Prop").  Complicating
Mr. Fishkin and Mr. Chernomzav's new venture were restrictive
covenants not to compete that had been included in their
employment contracts with SIG.

These restrictive covenants barred Mr. Fishkin and Mr. Chernomzav from trading in any products that they had traded during the three months before they left SIG's employ, for a period of either nine months after termination or three years after beginning SIG's initial training course, whichever was later. The covenants also barred Mr. Fishkin and Mr. Chernomzav from partnering with anyone who was employed at SIG during the nine months prior to their termination for a period of five years after their termination. As a remedy for breach of these covenants, the employment contract gave SIG the option to either obtain liquidated damages of between $700,000 and $800,000 or alternatively to obtain an injunction to enforce the covenants and seek any other remedies to which it was entitled at law.

This action was filed by Mr. Fishkin and Mr. Chernomzav in state court in 2003, seeking a declaratory judgment that their non-competition agreements were unenforceable.[1] SIG removed the case to this Court, impleaded TABFG and NT Prop. as third-party defendants, and filed a counterclaim seeking an injunction against Mr. Fishkin and Mr. Chernomzav to enforce their non-competition agreements and seeking damages against them for breach of contract and against all four counterclaim defendants

---

[1]  In addition to Mr. Fishkin and Mr. Chernomzav, another former SIG employee is also a plaintiff in this suit, Francis Wisniewski. Mr. Wisniewski is not named as a defendant in any of SIG's counterclaims and has not joined in either of the cross-motions for summary judgment at issue here.

2

for misappropriation of trade secrets, conversion, tortious interference with contract, and civil conspiracy.

Numerous proceedings have already been held in this matter. SIG moved for a preliminary injunction to enforce Mr. Fishkin and Mr. Chernomzav's non-competition agreements. After a week-long hearing, the request for a preliminary injunction was granted on September 16, 2003, by the Honorable James McGirr Kelly. In February 2006, SIG moved for summary judgment to make permanent the preliminary injunctive relief. This Court granted that motion on May 31, 2006. Now before the Court are two cross-motions for summary judgment: 1) the Motion of Cal Fishkin, Igor Chernomzav, and TABFG LLC for Summary Judgment on the Claims for Damages for Breach of the Restrictive Covenants in Counts I, IV, and V of the Amended Counterclaim and 2) the Motion of Counterclaimant Susquehanna International Group LLP for Summary Judgment Regarding Disgorgement of Profits and in Opposition to the Motion of Cal Fishkin, Igor Chernomzav and TABFG LLC for Summary Judgment.[2]

The central legal dispute in these cross-motions is the proper measure of damages for Mr. Fishkin and Mr. Chernomzav's breach of their non-compete covenant. SIG concedes that because of the nature of the trading business, it cannot identify

---

[2] Counterclaim defendant NT Prop filed its own motion for summary judgment. That motion has been addressed in a separate order.

specific trading business it lost because of Mr. Fishkin and Mr. Chernomzav's competition or estimate the value of its lost profits.  Instead, it contends that its damages should be measured by the profits that Mr. Fishkin and Mr. Chernomzav (as well as their company TABFG and its partner NT Prop) earned during the five months from late April to mid September 2003 in which they were breaching the agreements.  These profits allegedly amount to $3,200,000.

In opposition, Mr. Fishkin, Mr. Chernomzav, and TABFG contend that their profits are neither a proper nor a legally available measure of damages for SIG's loss.  They further argue that, if SIG cannot prove its lost profits, then it has no legally compensable damages for its claims of breach of contract, tortious interference and conspiracy, and these claims must be therefore be dismissed.

This Court will deny SIG's motion in its entirety and grant the motion of Mr. Fishkin, Mr. Chernomzav, and TABFG in part.  For the reasons given below, the Court believes that SIG's claims here do not entitle it to obtain the counterclaim defendants' gains as damages for its losses.  The proper measure of damages for the claims at issue here are SIG's lost profits. If, as SIG concedes, these lost profits cannot be estimated, SIG is nonetheless entitled to nominal damages if it can establish the defendants' liability and the fact (if not the amount) of its

4

damages.  Because the Court finds that there are disputed issues of fact as to whether SIG has suffered damages, the counterclaim defendants are not entitled to summary judgment.

I.  <u>LEGAL ANALYSIS</u>

The parties agree that SIG's counterclaims here are governed by Pennsylvania law.  Under Pennsylvania law, the party alleging a breach of contract has the burden of proving damages resulting from that breach.  <u>Spang & Co. v. U.S. Steel Corp.</u>, 545 A.2d 861, 866 (Pa. 1988); <u>Corestates Bank, N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).  Damages must be established with "reasonable certainty" and may not be recovered if they are too speculative, vague or contingent.  <u>Spang</u>.  Proof of the exact amount of loss or a precise calculation of damages, however, is not required as long as the evidence "with a fair degree of probability" establishes a basis for the assessment of damages.  <u>Id.</u>, <u>quoting</u> <u>Aiken Indus., Inc. v. Estate of Wilson</u>, 383 A.2d 808, 812 (Pa. 1978) (plurality opinion).

A    SIG may not obtain the profits that the defendants made while competing with SIG as damages for the defendants' <u>breach of the non-competition agreements.</u>

Under Pennsylvania law, damages for breach of a non-competition agreement are usually measured as the profits that the non-breaching party lost as a result of the breach.  <u>American</u>

5

<u>Air Filter, Inc. v. McNichol</u>, 527 F.2d 1297, 1299 (3d Cir. 1975) (plaintiff's damages were properly measured as "the profits it would have made on sales it could reasonably expect to have secured had [the defendant] not sold in breach of the agreement"); <u>TelAmerica Medic Inc. v. AMN Television</u>, 2002 WL 32373712 at *17 (E.D. Pa. Sept. 26, 2002) (same); <u>Aiken</u>, 383 A.2d at 812 (plurality opinion) (same); <u>Scobell, Inc. v. Schade</u>, 688 A.2d 715, 718-19 (Pa. Super. Ct. 1997) (same).

Here, however, SIG has conceded that, because of the nature of its business in trading securities, it is "impossible to calculate trading profits SIG would have made but for the violation of the restrictive covenant or the value of the good will lost" and therefore "it is impossible to prove the amount it lost." SIG's Mem. of Law ("SIG Mem.") in Support of its Motion for Summary Judgment at 12, 14. Instead, for damages on its claims, SIG seeks "disgorgement" of all the profits generated by the counterclaim defendants "from the violation of the restrictive covenants by Fishkin and Chernomzav, plus interest." SIG Mem. at 2. SIG characterizes what it seeks as "restitution damages." <u>Id.</u> at 15.

Pennsylvania law recognizes restitution damages as one of "three distinct, yet equally important, theories of damages to remedy a breach of contract: 'expectation' damages, 'reliance' damages, and 'restitution' damages." <u>ATACS Corp. v. Trans World</u>

6

Communications, Inc., 155 F.3d 659, 669 (3d Cir. 1998); see also

Trosky v. Civil Service Comm'n, 652 A.2d 813, 817 (Pa. 1995).

Expectation damages are the "preferred basis for contract

damages" and seek to give the injured party the benefit of its

bargain by attempting to place the aggrieved in as good a

position as it would have been, had the contract been performed.

Id.  Expectation damages are measured by "the losses caused and

gains prevented by defendant's breach," less any savings or other

benefits from the defendant's non-performance.  Id., citing

American Air Filter, 527 F.2d at 1299.

    Although expectation damages are the usual and

preferred remedy for breach of contract, an injured party may

alternatively seek reliance and restitution damages.  Such

damages are typically resorted to when "recovery based on

traditional notions of expectation damages is clouded," as it is

here, "because of the uncertainty in measuring the loss in value

to the aggrieved contracting party."  Id.  Reliance damages seek

to put the injured party in the position that it would have had,

if the contract had never been made and are usually measured by

the expenditures made in performance of the contract.

Restitution damages, in contrast, seek to prevent one party from

being unjustly enriched and are measured by the benefit received

by the party subject to restitution.  Id.  The purpose of

restitution damages, like that of reliance damages, "is to return

the plaintiff to the position it held before the parties'
contract."  24 Richard A. Lord, <u>Williston on Contracts</u> § 64:2
(4th ed. 2006).

Here, under its restitution theory, SIG argues that the
benefit it conferred upon Mr. Fishkin and Mr. Chernomzav was the
training it gave them in SIG's analytical methods and its trading
method and the opportunities it gave them to learn what areas of
trading were particularly profitable and to generate "good will
with others in the trading pit."  SIG Mem. at 16.  SIG contends
this "knowledge, strategy, and good will" enabled Mr. Fishkin and
Mr. Chernomzav to earn the $3,200,000 in profits that the two
generated for their joint venture while breaching their non-
competition agreements.  It argues that the proper measure of
restitution for the benefits conferred on Mr. Fishkin and Mr.
Chernomzav would be a disgorgement of these profits.  <u>Id.</u>

SIG's theory of restitution, however, is contrary to
the controlling opinion of the U.S. Court of Appeals for the
Third Circuit in <u>American Air Filter</u>, 527 F.2d at 1299-1301.  In
<u>American Air Filter</u>, the court considered a company's suit for
breach of a non-competition agreement by its former salesperson.[3]
In addition to seeking damages for the profits it lost from the

_____

[3] <u>Air Filter</u> was decided under both Pennsylvania and
Kentucky law.  The case implicated both states' laws, and the
court, finding no conflict between them, applied them both in
reaching its decision.  <u>Id.</u> at 1299 n.4.

salesperson's competition, the _Air Filter_ plaintiff, like SIG here, also sought to obtain as damages any profits the salesperson's new company made from his competing sales, as well as any commissions the salesperson earned on those sales.

The _Air Filter_ court rejected the company's attempt to measure its damages by the competing company's profits, noting "[t]he basic failing of the plaintiff's theory is that the defendant's profits are not necessarily equivalent to the plaintiff's losses" and that to "compel the defendant to disgorge these profits could give the plaintiff a windfall and penalize the defendant, neither of which serves the purpose of contract damages." _Id._ at 1300.  The court likewise rejected the company's attempt to obtain the defendant salesman's commissions, finding no relationship between the salesman's earnings and the plaintiff's losses.  _Id._ at 1301.  Instead, the court held that the proper measure of damages for breach of the non-competition agreement were "the profits [the plaintiff] would have made on sales it could reasonably expect to have secured had [the defendant] not sold in breach of the agreement."  _Id._ at 1300.

Like the plaintiff in _Air Filter_, SIG here is seeking to measure its damages for breach of a non-competition agreement by the breaching party's profits rather than its own losses.  As found by the _Air Filter_ court, however, this is not an appropriate measure of damages for breach of a non-competition

agreement, and there is no relationship between the profits Mr. Fishkin and Mr. Chernomzav made by competing with SIG and the compensable losses SIG suffered.

SIG attempts to distinguish <u>Air Filter</u> on several grounds. First, it suggests that the case's discussion of whether the defendant's profits are a proper measure of the plaintiff's damages is <u>obiter</u> <u>dicta</u>. This is incorrect. The pertinent issue on appeal in <u>Air Filter</u> was whether the trial court had improperly restricted the plaintiff in presenting evidence of its damages, specifically whether it had improperly restricted the plaintiff from presenting evidence of the defendant company's profits and the defendant salesman's commissions. <u>Id.</u> at 1299. In resolving the issue, the court had to determine whether the defendants' profits and commissions were a proper measure of damages for breach of a non-competition agreement. The court's decision that they are not proper is therefore a binding holding and not dicta.

SIG also argues that <u>Air Filter</u> is distinguishable because it did not specifically address restitution damages or consider whether the defendant's profits could be recovered as compensation for benefits conferred to the defendant by the plaintiff. SIG contends that restitution would have been inappropriate in <u>Air Filter</u> because the salesman in that case received no specialized training or other benefit from its

10

employer.  In contrast, here SIG contends it provided valuable specialized training to Mr. Fishkin and Mr. Chernomzav, the value of which is properly measured by the amount of profits they earned as a result of that training.  In support of its argument, SIG cites to two cases in which courts have held that the defendant's profits can be an appropriate measure of restitution for breach of a non-competition agreement:  Y.J.D. Restaurant Supply Co., Inc. v. DIB, 98 Misc. 2d 462 (N.Y. Sup. Ct. 1979) and Patterson v. Glassmire, 31 A. 40 (Pa. 1895).

The Court does not find either SIG's attempt to distinguish Air Filter or its contrary authority persuasive.  Although the Air Filter court did not specifically mention the term "restitution," it considered exactly the same remedy sought by SIG here:  the disgorgement of all profits earned by the defendants on sales in violation of the non-competition agreement.  The court found that such a measure of damages could not be justified because compelling the defendants to disgorge their profits could "give the plaintiff a windfall and penalize the defendant, neither of which serves the purpose of contract damages."  Id at 1300.  The Air Filter court's reasoning, even though not couched in the language of restitution, forecloses SIG's theory.

Here, as in Air Filter, the "basic failing" of SIG's theory is that the counterclaim defendants' profits are not

necessarily equivalent to SIG's losses, whether those losses are viewed as SIG's lost profits or SIG's restitution interest in the benefit of its training.  The value of the training that SIG gave Mr. Fishkin and Mr. Chernomzav is not reasonably measured by the profits the two made during their breach of the non-competition agreements.  Although SIG's training indisputably benefitted Mr. Fishkin and Mr. Chernomzav and enabled them to become profitable traders, the value of that training bears no logical relationship to the profits they earned for the five months in which they violated their non-competition agreements.   Had Mr. Fishkin or Mr. Chernomzav violated the non-competition agreements for a significantly shorter or longer period of time, or at a time when the market was significantly more or less profitable than it was when they actually violated the agreements, their profits would have been substantially different than what they actually earned; yet the value of the training they received would remain the same.  As in Air Filter, compelling the defendants to disgorge their profits as restitution would improperly risk giving the plaintiff a windfall or penalizing the defendant, "neither of which serves the purpose of contract damages."

        The authority SIG cites is not to the contrary. Y.J.D. Restaurant Supply is a decision of a New York state trial court applying New York law.  It has no bearing on this suit

under Pennsylvania law.[4]  Patterson, while a decision of the
Pennsylvania Supreme Court, was decided 113 years ago and was
last cited as authority 48 years ago on an unrelated point of
law.

Although Patterson supports SIG's argument, the Court
does not believe it still represents a valid statement of
Pennsylvania law.  Patterson held that a plaintiff who could not
estimate the profits it lost from a defendant's breach of a non-
competition agreement could nonetheless recover the defendant's
profits as damages.  The court gave several rationales for its
decision.  The non-competition agreement in Patterson was
provided by the seller of a business to the buyer, and the court
analogized the breach of the agreement to the infringement of
intellectual property, reasoning that the business good will that
the agreement was designed to protect "would seem to be just as
much property as is the right to a patent or copyright."  Id. at
45.  The Patterson court also analogized the breach of the

---

[4]  Even if Y.J.D. were relevant authority, it would be
distinguishable.  In Y.J.D., the non-competition agreement at
issue was entered into as part of the defendant's sale of his
business to the plaintiff.  After the sale, the defendant
breached the agreement, opened a competing business, and then
sold it to another.  Id., 98 Misc. 2d at 463.  After a bench
trial, the trial court awarded the defendant's profit from the
sale of the competing business to the plaintiff as damages,
reasoning that the defendant had, in effect, sold his business
good will twice in violation of his agreement.  Id. at 464-65.
This reasoning does not apply here, because the Fishkin and
Chernomzav non-competition agreements were part of employment
contracts, not part of the sale of a business.

agreement to breach of a fiduciary duty by a "trustee who has wrongfully used the trust property for his own advantage" and justified the award of the defendant's profits on the principle of equity "that a wrongdoer shall never profit by his own wrong." Id.

The Patterson court's analogy between breach of a non-competition agreement and patent or copyright infringement does not appear to have been followed by any modern Pennsylvania decisions, and even if still valid, would be inapplicable here because the Fishkin and Chernomzav agreements do not involve the sale of a business or business good will. The Patterson court's analogy of breach of a non-competition agreement to breach of a fiduciary duty is contrary to the modern understanding that breaching a contract is not a "wrong" and that tort or "equitable" damages are not available where are parties' rights are governed by contract. See, e.g., Windsor Securities v. Hartford Life Ins. Co., 986 F.2d 655, 664 (3rd Cir. 1993) ("Breach of contract, without more, is not a tort."); Wilson Area School Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) (holding unjust enrichment or quasi-contract damages to be unavailable when the relationship between the parties is founded on a written agreement or express contract).

Having found the case law cited by SIG to be neither binding or persuasive, the Court believes Air Filter controls

14

here.  The Court finds, in accordance with that decision, that
SIG cannot obtain the counterclaim defendants' profits as damages
for breach of the non-competition agreements because disgorgement
of those profits would not accurately reflect SIG's damages.

      B    SIG is not entitled to obtain the value of the training
           it gave to Mr. Fishkin and Mr. Chernomzav as
           restitution damages for their breach of their non-
           competition agreements.

SIG has raised an alternative theory of its damages.
At oral argument on these motions, SIG requested, if this Court
were to reject its argument that it was entitled to the
counterclaim defendants' profits as restitution for the benefit
conferred by SIG's training program, that it be permitted, as an
alternative, to present direct evidence of the cost and value of
that training and recover that value as restitution damages.  The
Court will deny this request.  Even this more limited restitution
damage theory is inappropriate under Pennsylvania law.

Contract damages for restitution require a defendant to
"disgorge the benefit he has received by returning it to the
party that conferred it."  Trosky, 652 A.2d at 817.  The purpose
of restitution is to "return the plaintiff to the position it
held before the parties' contract."  24 Williston on Contracts
§ 64:2.

15

Cases awarding restitution damages under Pennsylvania law, however, uniformly involve "benefits conferred" by the plaintiff that enure entirely to the advantage of the defendant. See, e.g., ATACS Corp., 155 F.3d at 669.  In ATACS, for example, the court awarded a subcontractor restitution for the fair value of the unpaid work it had done in support of its prime contractor's bidding proposal, finding that the subcontractor contributed valuable services that benefitted the contractor's ultimate bid.  Absent restitution, the subcontractor would have received no benefit from the work it had done, which would have accrued entirely to the benefit of the prime contractor.

Similarly, in cases awarding restitution damages for breach of a non-competition agreement, restitution is granted only where the benefit at issue profits the defendant only.  See, e.g., Sobers v. Shannon Optical Co., Inc., 473 A.2d 1035 (Pa. Super Ct. 1984); Ebright v. Shutter, 386 A.2d 66 (Pa. Super Ct. 1978).  In these cases, both involving the sale of businesses, the plaintiffs paid separate consideration for non-competition agreements from the sellers of the businesses they purchased. When the sellers subsequently breached these non-competition agreements, the plaintiffs were entitled to restitution of the separate consideration paid for those agreements, less a pro-rated amount for any time in which the sellers were not in breach.  Sobers at 1039 (awarding a "pro rata abatement" of the

16

separate consideration paid as a "restitutionary measure of damages"); Ebright at 68-69 (same).  In these cases, unless restitution was awarded, the plaintiffs would have provided the sellers with a benefit, the money paid, from which they received no advantage.

Here, however, the benefit for which SIG seeks restitution, SIG's training of Mr. Fishkin and Mr. Chernomzav, did not enure entirely to the counterclaim defendants' benefit. SIG also received significant benefits from that training during the three years that Mr. Fishkin and Mr. Chernomzav worked at SIG and applied that training to generate profits on SIG's behalf. As a consequence, the restitution SIG seeks for the value of its training would not serve to return SIG "to the position it held before the parties' contract," but would instead give SIG an unwarranted windfall.  Awarding restitution for the training's value would allow SIG to recover the cost of Mr. Fishkin and Mr. Chernomzav's training, while retaining the benefits of that training.  The Court therefore finds restitution damages for the value of SIG's training to be unavailable here.[5]

---

[5]  SIG's request for restitution damages in this case also appears to fail for another reason.  Under the Restatement Second of Contracts, when a party who is not in breach of a contract seeks restitution from a party who is in breach, restitution is available only "on a breach by non-performance that gives rise to a claim for damages for total breach or on a repudiation."  Rest. 2d Contr. § 373(1).  Here, SIG did not treat Mr. Fishkin and Mr. Chernomzav's breach of their non-competition agreements as a total breach or a repudiation, but instead sought and obtained an

C    Denying SIG restitution for the amount of the
defendants' profits or the value of the defendants'
<u>training does not work an injustice here.</u>

In its briefs and at oral argument, SIG argues
strenuously that denying it restitution in the form of a
disgorgement of the counterclaim defendants' profits would reward
Mr. Fishkin and Mr. Chernomzav for their "wrongdoing" and could
encourage other traders to breach their non-competition
agreements.  Because of the nature of securities trading, firms
like SIG cannot prove the amount of profits they lose from a
trader's breach of a non-competition agreement.  SIG argues that
traders, knowing of the difficulty that firms will have proving
damages, will have an incentive to repudiate their agreements
unless firms are entitled to the disgorgement of traders' profits
upon any breach.  SIG Mem. at 19.

SIG's argument is misplaced.  SIG and other securities
trading firms have the ability to protect themselves from their
foreseeable inability to calculate profits they might lose as a
result of a trader's breach of a non-competition agreement by
including an appropriate liquidated damages clause in their

---

injunction requiring them to specifically perform their duties
under the agreements.  Having elected to hold Mr. Fishkin and Mr.
Chernomzav to the terms of their contracts through an injunction,
Restatement § 373(1) would seem to bar SIG from seeking
restitution damages.  Pennsylvania, however, has not yet
expressly adopted § 373(1)and the parties have not addressed the
issue in their briefs.  For these reasons, the Court will not
decide the issue here and will deny SIG's request for restitution
damages on the other grounds set forth in this Memorandum.

traders' employment contracts.  Pennsylvania courts routinely uphold liquidated damages clauses in non-competition cases and have specifically upheld clauses that award the recovery that SIG seeks here, disgorgement of the breaching party's profits.  See, e.g., Omicron Systems, Inc. v. Weiner, 860 A.2d 554, 564-65 (Pa. Super. Ct. 2004) (awarding plaintiff liquidated damages under the terms of a non-competition agreement in the amount of the gross salary paid to the defendant while violating the agreement).

SIG, however, did not include a liquidated damages clause providing for disgorgement in its employment contracts with Mr. Fishkin and Mr. Chernomzav.  Although their contracts contained liquidated damages clauses, those clauses provided only for alternative relief of either injunctive relief to enforce the non-competition agreements, plus whatever additional remedies might be available at law, or liquidated damages in a graduated amount of between $700,000 and $800,000.  Here, SIG chose to pursue injunctive relief and forego its right to liquidated damages.

Having drafted the liquidated damages clauses in the Fishkin and Chernomzav employment contracts and having chosen to forego the liquidated damages available under those contracts, SIG "cannot be heard to complain now that it must bear the burden of proving lost profits with reasonable certainty."  Scobell, Inc. v. Schade, 688 A.2d 715, 719 (Pa. Super. Ct. 1997).

19

> D    Although SIG may not be able to establish the amount of
>      its damages, the counterclaim defendants are not
>      entitled to summary judgment because SIG can obtain
>      <u>nominal damages.</u>

Although, for the reasons set out above, SIG cannot quantify the amount of damages it suffered as a result of Mr. Fishkin and Mr. Chernomzav's breach of contract, the counterclaim defendants are nonetheless not entitled to summary judgment here.

Pennsylvania law allows a party who can establish that it has been harmed by another's breach of contract, but who cannot establish the amount of its loss, to receive an award of nominal damages.  <u>Spang</u>, 545 A.2d at 866, <u>quoting</u> <u>Aiken,</u> 383 A.2d at 812 (other internal quotations omitted)("there must be evidence of substantial damage in order to justify recovery of more than a nominal sum"); <u>Scobell</u>, 688 A.2d at 719 ("any breach of contract entitles the injured party at least to nominal damages").

Here, the Court finds that there remain disputed issues of fact as to whether SIG was harmed by Mr. Fishkin and Mr. Chernomzav's trading in breach of their non-competition agreements.  SIG is therefore entitled to seek an award of nominal damages.  The cross-motion for summary judgment of Mr. Fishkin, Mr. Chernomzav, and TABFG's will therefore be denied to the extent it seeks to dismiss the claims at issue in these motions and granted only to the extent it seeks to foreclose SIG

from obtaining a disgorgement of profits or other restitution damages.[6]

      An appropriate Order follows.

---

[6] Although Pennsylvania law is clear that nominal damages are available for breach of contract claims, it is not clear whether nominal damages are available for tortious interference or civil conspiracy claims arising out of a breach of contract. The parties have not addressed this issue in their briefs.  The U.S. Court of Appeals for the Third Circuit has held that where, as here, a tortious interference claim for inducing breach of a non-competition agreement alleges no injuries other than pecuniary losses resulting from the employee's breach, "the measure of damages for interference with contractual relations will be identical to that for breach of contract."  American Air Filter, 527 F.2d at 1300.  Accordingly, for purposes of resolving these motions for summary judgment, the Court will assume that nominal damages are available for SIG's tortious interference and civil conspiracy claims.  The Court's assumption that nominal damages are available for these claims is without prejudice to the parties' right to revisit this issue in appropriate pre-trial motions concerning the charge to the jury.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAL FISHKIN, et al.,           :    CIVIL ACTION
                               :
        v.                     :
                               :
SUSQUEHANNA PARTNERS, G.P.,    :
et al.,                        :
                               :
        v.                     :
                               :
TABFG, LLC, et al.,            :    NO. 03-3766


ORDER


AND NOW, this 12th day of February, 2007, upon consideration of the Motion of Cal Fishkin, Igor Chernomzav and TABFG LLC for Summary Judgment on the Claims for Damages for Breach of the Restrictive Covenants in Counts I, IV, and V of the Amended Counterclaim (Docket # 149) and the Motion of Counterclaimant Susquehanna Int'l Group LLP for Summary Judgment Regarding Disgorgement of Profits and in Opposition to the Motion of Cal Fishkin et al for Summary Judgment (Docket # 151), and the responses thereto, and after oral argument, IT IS HEREBY ORDERED that, for the reasons set forth in the accompanying memorandum:

1.    The Motion of Cal Fishkin, Igor Chernomzav and TABFG LLC for Summary Judgment on the Claims for Damages for Breach of the Restrictive Covenants in Counts I, IV, and V of the Amended Counterclaim (Docket # 149) IS GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED to the extent it seeks to dismiss Susquehanna Int'l Group LLP's damage claims on these Counts for

disgorgement of profits or other restitution damages.  The Motion is DENIED to the extent it seeks to dismiss these Counts in their entirety.

2.    The Motion of Counterclaimant Susquehanna Int'l Group LLP for Summary Judgment Regarding Disgorgement of Profits and in Opposition to the Motion of Cal Fishkin et al for Summary Judgment (Docket # 151) is DENIED.


BY THE COURT:


/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.

2