IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAL FISHKIN, et al., | : | CIVIL ACTION |
| v. | : | |
| SUSQUEHANNA PARTNERS, G.P., et al., | : | |
| v. | : | |
| TABFG, LLC, et al., | : | NO. 03-3766 |

MEMORANDUM

McLaughlin, J.                                              February 8, 2010

        This action arises from a dispute between a securities trading firm, Susquehanna International Group, LLP ("SIG"), and three of its former employees, Cal Fishkin, Igor Chernomzav, and Francis Wisniewski, over the enforcement of restrictive covenants in the employees' contracts with SIG. It also encompasses SIG's counterclaims against Fishkin, Chernomzav, and several third-party defendants for misappropriation and conversion of trade secrets, tortious interference with contract, and conspiracy.

        After lengthy pre-trial proceedings and a bench trial, the Court entered a final judgment on June 17, 2008. The United States Court of Appeals for the Third Circuit affirmed in a judgment entered July 27, 2009. SIG has now moved for the release of a $1.5 million bond that it posted as security for a preliminary injunction it obtained against Fishkin, Chernomzav, and Wisniewski. Chernomzav has filed a cross-motion seeking an

award of damages under the bond, contending that the Court's findings of fact in its bench verdict, now affirmed on appeal, contradict the factual basis for the preliminary injunction issued against him.

For the reasons that follow, the Court will grant SIG's motion and deny Chernomzav's motion and order the release of the bond.

I. <u>FACTUAL BACKGROUND</u>

This suit began as a declaratory judgment action filed on March 23, 2003, in Pennsylvania state court by Fishkin, Chernomzav, and Wisniewski against SIG. Fishkin, Chernomzav, and Wisniewski had worked for SIG as securities traders before leaving the firm. They sought to invalidate the restrictive covenants in their employment contracts with SIG to allow them to work together in a new trading venture. Fishkin and Chernomzav also brought a claim alleging that SIG had fraudulently induced them into signing their contracts.

In April 25, 2003, after the declaratory judgment action was filed but before any ruling had been made, Fishkin and Chernomzav began trading through an entity called TABFG, LLC ("TABFG"), which was a joint venture between Fishkin, Chernomzav, and a company called NT Prop. Trading, LLC ("NT Prop"). A large part of the trading done by Fishkin and Chernomzav at TABFG was

trading in Dow Futures using a trading strategy that has been referred to in this litigation as the "Dow Fair Value strategy." Fishkin and Wisniewski had used the Dow Fair Value strategy while employed at SIG. Wisniewski did not join TABFG or trade using the Dow Fair Value strategy after leaving SIG, although he intended to do so if the restrictive covenants in his contract with SIG were declared invalid.

In June 2003, SIG filed a counterclaim against Fishkin and Chernomzav, but not Wisniewski, for breach of contract, misappropriation of trade secrets, conversion, tortious interference with contract, and civil conspiracy. SIG also impleaded as additional counterclaim defendants TABFG, NT Prop, and Richard Pfeil (one of the principals of NT Prop), bringing the same claims against them. SIG then filed a motion for a preliminary injunction against Fishkin, Chernomzav and Wisniewski seeking to enforce the terms of their restrictive covenants. After the motion was filed, counterclaim defendants NT Prop and Richard Pfeil removed the case to this Court on June 23, 2003.

After removal, the then-presiding judge, the Honorable James McGirr Kelly, held an evidentiary hearing from July 8 to July 15, 2003, on SIG's motion for a preliminary injunction. Judge Kelly issued a Memorandum and Order on September 16, 2003, making findings of fact and granting the motion to enjoin

3

Fishkin, Chernomzav, and Wisniewski.[1]  On September 25, 2003, Judge Kelly ordered SIG to give security in the amount of $1.5 million "for the payment of costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."  Fishkin, Chernomzav, and Wisniewski filed an interlocutory appeal of the preliminary injunction order on September 26, 2003, but voluntarily dismissed the appeal on July 8, 2004.  On March 16, 2005, the case was transferred to this Judge.

Paragraph one of Judge Kelly's September 16, 2003, preliminary injunction order enforced the non-competition covenants in Fishkin and Chernomzav's employment contracts.  Paragraph one enjoined Fishkin and Chernomzav for a period of nine months from the date of their departure from SIG's employ from a) "trading any security, including the [Dow Futures] and Related Products,[2] that each traded within the three month period

---

[1]   In his September 16, 2003 Memorandum Order, to protect the confidentiality interests involved, Judge Kelly used only generic descriptive terms to refer to the specific securities at issue and the specific traders involved (e.g., "Trader A," "the Product").  He provided a glossary under seal to aid in the event of an appeal.  With the passage of time and the conclusion of the litigation, the need for confidentiality has abated and the parties have filed copies of the glossary and other documents originally filed under seal as exhibits to their current cross-motions.

[2]   Judge Kelly defined "Related Products" to the Dow Futures as certain products "such as S&P Futures, NASDAQ futures and the electronic, of 'e-mini' versions of the Dow and S&P Futures."  Glossary Memorandum of September 16, 2003, at 2.  As

4

prior to each of their departures from SIG's employment" or b) "associating with each other in a securities trading business."

Paragraph two of the preliminary injunction order prohibited Fishkin and Chernomzav from disclosing or using "SIG Confidential Information," defined to include the Dow Fair Value strategy, to trade the Dow Futures or related products. Paragraph three enjoined Francis Wisniewski from associating with Fishkin or Chernomzav in a trading venture "and/or" trading the Dow Futures and related products for the period of time provided in his employment agreement. Paragraph four reduced the duration of a non-association restriction in SIG's restrictive covenants from five years to three years.

In February 2006, SIG moved to make permanent the injunction embodied in paragraph one of the September 16, 2003, Order, enforcing the terms of Fishkin and Chernomzav's restrictive covenants. SIG also moved for the release of its bond. In a Memorandum and Order issued May 31, 2006, the Court granted the motion to make permanent the injunction embodied in paragraph one of the preliminary injunction order but denied the request to release the bond. The Court reasoned that, because SIG had not moved to make permanent the injunctive relief embodied in paragraphs two and three of the September 16, 2003,

---

discussed in the Court's June 17, 2008, Memorandum announcing its bench verdict, these related products were used to hedge trades in Dow Futures made using the Dow Fair Value strategy.

Order, there remained the possibility that those two paragraphs of the injunction could be found to have been wrongfully issued, which might allow a recovery against the bond.

In April 2007, the Court held a bench trial on the claims remaining in the case: SIG's claims against Fishkin, Chernomzav, TABFG, and NT Prop for misappropriation of trade secrets, conversion, tortious interference with contract, and civil conspiracy.[3] On June 17, 2008, the Court issued a ninety-seven page opinion setting out its findings of fact and conclusions of law and entering the judgment of the Court. The Court entered judgment against SIG and in favor of the counter-claim defendants on all claims except SIG's claim for tortious interference against NT Prop, for which the Court entered judgement for SIG but awarded only nominal damages. In finding against SIG on its claims for misappropriation of trade secrets and conversion, the Court specifically found that SIG's Dow Fair Value strategy, whether expressed as a concept or as an algebraic formula, was too widely known and too easily ascertainable to

---

[3] In previous rulings, the Court had dismissed SIG's claims against Richard Pfeil and granted summary judgment on Fishkin and Chernomzav's fraudulent inducement claims against SIG. Although SIG's breach of contract claim against Fishkin and Chernomzav was technically before the Court at the bench trial, the Court found in its June 17, 2008, decision that SIG had failed to provide proposed conclusions of law on that claim and declined to decide it.

constitute a protected trade secret under applicable Pennsylvania law.

SIG took a timely appeal of the Court's decision, and on July 27, 2009, the United States Court of Appeals for the Third Circuit affirmed.

On January 15, 2010, SIG and Chernomzav filed their cross-motions concerning SIG's $1.5 million security bond. SIG's motion seeks the release of the bond in its entirety. Chernomzav's motion seeks an award of costs and damages against the bond in the amount of $713,738.20, plus $271,220.52 in interest.

II. ANALYSIS

SIG has moved for the return of its security bond, arguing that all proceedings concerning the merits of this action have now concluded and no injunction defendant has a valid claim to have been wrongfully enjoined. Of the parties subject to the injunction, only Chernomzav has made a claim against the bond. The merits of SIG's motion therefore turn on the merits of Chernomzav's claim to have been wrongfully enjoined.

Both SIG and Chernomzav agree on the applicable legal standard for determining whether Chernomzav was wrongfully enjoined. A party will have been wrongfully enjoined and entitled to recover against an injunction bond if "it is

7

ultimately determined that the enjoined party in fact had the right all along to pursue the enjoined conduct." Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1054 (2d Cir. 1990) (quoted in SIG Br. in Support of its Motion to Release Security at 8 and Chernomzav Br. in Support of Motion for Costs at 15); see also Global Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13 (1st Cir. 2007) ("[W]e hold that under Rule 65(c), a party is wrongfully enjoined when it had a right all along to do what it was enjoined from doing."); Slidell, Inc. v. Millennium Inorganic Chems., Inc., 460 F.3d 1047, 1059 (8th Cir. 2006) (same); Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc., 16 F.3d 1032, 1036 (9th Cir. 1994) (same).[4]

---

[4] The United States Court of Appeals for the Third Circuit has yet to address the standard to be used to determine whether a party has been wrongfully enjoined and can recover against a security bond posted under Federal Rule of Civil Procedure 56(c). It has discussed the standard briefly in dicta, citing Blumenthal with approval in a footnote in Sprint Commc'ns Co., L.P. v. CAT Commc'ns Int'l, Inc., 335 F.3d 235, 242 n.9 (3d Cir. 2003). The Sprint court upheld a district judge's decision to dissolve a preliminary injunction originally issued two years earlier by a different judge overseeing the matter. In doing so, the court explained that, in affirming the dissolution, it was not suggesting that the original district judge had wrongly issued the injunction in the first instance. The court noted that the question of whether an injunction had been wrongly issued could be determined only after a trial and final judgment on the merits and, quoting Blumenthal, explained that "'[t]he conclusion that [a preliminary] injunction later dissolved was 'wrongful,' in the sense that the party had the right to do the enjoined act, does not necessarily [mean] that the district court abused its discretion in granting the relief in the first place.'" Sprint, 335 F.3d at 242 n.9 (corrections in original) (quoting Blumenthal, 910 F.2d at 1054).

Chernomzav's argues that he has been wrongfully enjoined and can recover against the bond because 1) paragraph two of the Court's September 16, 2003, preliminary injunction order was improperly issued and 2) because without that paragraph, nothing in the order would have prevented Chernomzav from using the Dow Fair Value formula and trading Dow Futures. Chernomzav alleges that, but for paragraph two, he would have used the Dow Fair Value strategy to trade Dow Futures independently, not in association with Fishkin or Wisniewski, for the 170 trading days between September 17, 2003, when the injunction issued, and May 13, 2004, when the nine-month-long restrictions in paragraph one of the injunction order expired and Chernomzav joined a trading firm named Hard Eight. Chernomzav estimates his lost profits from not trading Dow Futures during this 170 day period to be $713,738.20, plus $271,220.52 in interest.

Chernomzav contends that paragraph two was improperly issued because the factual findings upon which it was based were subsequently contradicted by the factual findings in the Court's bench verdict and final judgment. The Court agrees that the findings of fact in its bench verdict have fatally undercut the factual basis for paragraph two.

Paragraph two of the preliminary injunction order stated that Fishkin and Chernomzav "shall be prohibited from

disclosing or using SIG's Confidential Information, including the [Dow Fair Value] Strategy, the Formula, and Trading Tools implementing the Strategy to trade [Dow Futures] and Related Products." In the Conclusions of Law supporting the preliminary injunction order, the Court rejected Fishkin and Chernomzav's argument that the provision protecting SIG's confidential information was unenforceable because the Dow Fair Value strategy and formula and the trading tools used to implement it "are generally known and not a trade secret." The Court concluded that, even if some of the components of the Dow Fair Value Strategy were generally known and therefore not trade secrets, SIG's "unique combination of these components" to trade Dow Futures constituted a protected trade secret. September 16, 2003, Memorandum at 34-35, ¶¶ 15, 17.

The Court subsequently reached the opposite conclusion after the bench trial. The June 17, 2008, Memorandum and Order setting out the decision of the Court held that, based on the evidence presented at trial, "the Dow Fair Value concept, formula, and spreadsheet were too widely known and too easily ascertainable to constitute protected trade secrets." June 17, 2008, Memorandum at 76. Because the factual underpinnings of

paragraph two were not upheld in the bench verdict and final judgment, paragraph two was wrongly issued.[5]

For Chernomzav to prevail on his claim against the injunction bond, it is not enough for him to show that the factual underpinnings of paragraph two of the injunction order were subsequently rejected. To establish that he has been wrongfully enjoined and entitled to recover against the bond, Chernomzav must show that he "in fact had the right all along to pursue the enjoined conduct." Blumenthal, 910 F.2d at 1054. Chernomzav has failed to make this showing because the conduct that he alleges that he would have pursued if paragraph two had

---

[5] The fact that the Court reached a different conclusion in the 2008 bench verdict than it had reached in the 2003 preliminary injunction order does not imply that the entry of the injunction order was improper or an abuse of discretion. See Sprint, 335 F.3d at 242 n.9. The preliminary injunction order was based on SIG's likelihood of success on the merits as shown by the evidence presented at the time. The Court's conclusions of law in support of the order state that, although Fishkin and Chernomzav presented some evidence that the Dow Fair Value concept, formula, and spreadsheet were generally known in the industry, this evidence consisted only of Wisniewski's testimony of his "observations of how the other traders traded, casual conversations with the other traders, and glances of the other traders' computer equipment" to which the Court gave "minimal weight," as well as the testimony of another trader, Michael Floodstrand, whose testimony the Court found did not establish that he used the Dow Fair Value formula in his trading or that he used any formula at all. September 16, 2003 Memorandum at 21, ¶¶ 57-58, at 35, ¶ 17. At the subsequent bench trial, Fishkin and Chernomzav presented significantly more evidence concerning the knowledge of the Dow Fair Value formula among the trading community, including testimony from additional traders who testified that they used the Dow Fair Value strategy, formula, and spreadsheet in their own trades before it was adopted by SIG. June 17, 2008 Memorandum at 34-36, ¶¶ 82-85.

not been issued -- using the Dow Fair Value strategy to trade the Dow Futures for the 174 trading days from September 17, 2003, through May 13, 2004 -- was also prohibited by paragraph one of the injunction order, whose scope and legitimacy have never been challenged.

Paragraph one of the injunction order was based on the restrictive covenants in Fishkin and Chernomzav's employment contracts with SIG. It prohibited Fishkin and Chernomzav, for a period of nine months from leaving SIG's employ, from either (a) "trading any security, including the [Dow Futures] and Related Product, that each traded within the three month-period prior to each of their departures from SIG's employment" and (b) "associating with each other in a securities trading business."

Chernomzav contends that neither provision of paragraph one would have prevented him from using the Dow Fair Value strategy to trade Dow Futures during the 174-day period at issue. Chernomzav concedes that the 174-day period was within nine months of his departure from SIG and therefore within the time when paragraph one was in force. He argues, however, that, the first section of paragraph one would not prevent him from trading Dow Futures because he never traded Dow Futures while at SIG and therefore that security was not one he traded within the three-month period before his departure. He argues that the second section of paragraph one would not prevent his trading because he

12

intended to do so independently, and not in association with Fishkin or any other former SIG employee.

Chernomzav's argument misconstrues the scope of paragraph one. In arguing against the issuance of the preliminary injunction, Chernomzav argued to the Court that, because he had not traded Dow Futures while at SIG, he could not be enjoined from trading Dow Futures on the basis of his contract's restrictive covenant forbidding him, for nine months after leaving SIG, from trading securities that he had traded in the three months prior to leaving SIG. The Court specifically rejected this argument and specifically enjoined Chernomzav from trading Dow Futures.

In its September 16, 2003, Memorandum, the Court found that, after Fishkin and Chernomzav formed TABFG, Fishkin trained Chernomzav in the Dow Fair Value formula and taught him how to use it to trade Dow Futures. The Court concluded that, in doing so and in directing Chernomzav as to how and when he should trade, Fishkin effectively made Chernomzav his agent in trading Dow Futures. Based on this finding and on the principle that an agent cannot do what a principal is enjoined from doing, the Court held that Chernomzav should be bound by the same restrictions as Fishkin and enjoined him from trading Dow Futures:

> Although [Chernomzav] did not personally trade [Dow Futures] within the last three

>     months of his employment with SIG, [Fishkin]
>     cannot circumvent the nine-month/three-month
>     restriction by directing an agent,
>     [Chernomzav], to do for him that which he is
>     prohibited from doing himself.  <u>Therefore
>     [Chernomzav] is enjoined from trading [Dow
>     Futures], and from employing SIG's [Dow Fair
>     Value] Strategy, Formula, and Trading Tools
>     to trade [Dow Futures].</u>

September 16, 2003, Memorandum at 36, ¶ 21 (emphasis added). This injunction was embodied in section (a) of paragraph one of the Court's preliminary injunction order.

No subsequent findings have undermined the validity of paragraph one.  On SIG's motion, the Court made the injunction in paragraph one permanent in its Memorandum and Order of May 31, 2006.  In so doing, the Court specifically reaffirmed that paragraph one forbade Chernomzav from trading Dow Futures because he had been taught to do so as Fishkin's agent:

> Fishkin and Chernomzav argue that Chernomzav
> did not trade the Dow futures at SIG.  As
> Judge Kelly noted, however, Fishkin taught
> him the strategy for trading this product,
> and "essentially made [him] his agent for
> doing so."  [September 16, 2003, Memorandum]
> at ¶ 49.  The injunction was proper against
> Chernomzav, because Fishkin could not
> circumvent the restriction by directing an
> agent to do what he himself was prohibited
> from doing.  <u>Id.</u> at ¶¶ 19-20.  There is no
> genuine dispute of material fact that the
> nine-month/three-month clause is enforceable.

May 31, 2006, Memorandum at 26.  Chernomzav did not challenge whether paragraph one's restriction against trading Dow Futures

applied to him, either by seeking a modification of the injunction in this Court or by appeal.

Chernomzav attempts to circumvent the clear language in both the September 2003 and May 2006 Memoranda by arguing that he was bound only by the "four corners" of the preliminary and permanent injunction orders and that the text of paragraph one is ambiguous as to whether Chernomzav, along with Fishkin, was enjoined from trading Dow Futures. Chernomzav also argues that, to the extent the Court relied on his agency relationship with Fishkin to enjoin him from trading Dow Futures, that injunction should be interpreted to have barred him only from trading Dow Futures as Fishkin's agent, not from trading Dow Futures independently.

Neither of these arguments is persuasive. Any ambiguity as to whether section (a) of paragraph one forbade Chernomzav from trading Dow Futures was removed by the clear language in the accompanying Memorandum, which expressly clarified that Chernomzav was so enjoined. To the extent that Chernomzav was confused by the Court's plain statement in the Memorandum that Chernomzav was "enjoined from trading [Dow Futures], and from employing SIG's [Dow Fair Value] Strategy, Formula, and Trading Tools to trade [Dow Futures]," the time to clarify that confusion was at the time the injunction issued, not now, almost six years after the terms of paragraph one expired.

15

It is now too late for Chernomzav to seek to retroactively narrow the scope of paragraph one.

Chernomzav is similarly unpersuasive in arguing that the prohibition against his trading Dow Futures in section (a) of paragraph one only barred him from trading as Fishkin's agent, but did not forbid him from trading Dow Futures independently. Nothing in either paragraph one or the accompanying memorandum suggests that the restriction against trading Dow Futures was limited only to trades made by Chernomzav as Fishkin's agent. Indeed, such a limited restriction would have been redundant, since Chernomzav was enjoined from acting as Fishkin's agent in any trading capacity under section (b) of paragraph one, which prohibited Fishkin and Chernomzav from associating together in a securities trading business.

Because Chernomzav was prohibited from trading Dow Futures by paragraph one of September 16, 2003, preliminary injunction order, he cannot establish that he was wrongfully enjoined from such trading by the improper issuance of paragraph two of that order. Chernomzav's motion for the award of costs and damages against the injunction bond will therefore be denied.[6] Because Chernomzav is the only litigant subject to the injunction who has made a claim against the bond, and his claim

---

[6] Because the Court is denying Chernomzav's motion on this ground, it will not address SIG's arguments concerning the adequacy of Chernomzav's calculation of his claimed damages.

16

has now been denied, the Court will order the release of the bond and the return of that security to SIG, plus accrued interest, pursuant to Federal Rule of Civil Procedure 65(c).

An appropriate Order will be entered separately.